**Application of SHAREHOLDERS DATA CORPORATION.**

**Patent Appeal No. 9242.**

United States Court of Customs and Patent Appeals.

May 16, 1974.

Daniel P. Chernoff, Portland, Or., atty. of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

1. Abstracted at 178 USPQ 629 (1973).

2. Serial No. 412,200 filed January 10, 1972.

Before RICH, BALDWIN, LANE, MILLER, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision [1] of the Trademark Trial and Appeal Board affirming the examiner's refusal to grant appellant's application [2] to register the mark "PERSONALYST" as a trademark for "periodic, computer-prepared reports on the valuations of subscribers' securities portfolios" on the ground that the reports are not goods in trade but "are the way in which the service is rendered and would be of interest only to the particular subscriber whose portfolio of securities is reported on." The parties have submitted the case on the record and briefs.

Appellant is already the owner of a registration [3] of "PERSONALYST" as a service mark for "financial reporting services, namely, providing subscribers with periodic computer-prepared reports on the valuation of their individual securities portfolios."

The record reveals that the reporting services here involved are made available to the customer as a computer print-out report evaluating his portfolio. The report contains information reflecting the high and low prices of his securities as well as dividend rates, current yields and price earning ratios and lists the performance of leading market indicators for various periods of time. The report is not directed to investors in general, but to the particular subscriber whose portfolio is being analyzed. It is not sold separately and has no independent value apart from the services, which differentiates this case from In re Firstamerica Corp., 127 USPQ 94 (TTAB 1960); In re American Savings and Accounting Supply, Inc., 172 USPQ 406 (TTAB 1972), and Ex Parte Greyvan Lines, Inc., 99 USPQ 343 (Com. of Pat. 1953).

3. Reg. No. 950,109.

The issue presented for resolution, as aptly stated by the solicitor, is "whether appellant's reports to its subscribers are 'goods' within the contemplation of the Trademark Act or whether the reports are in fact the services or the *sine qua non* manifestations of the financial reporting services offered by appellant." We think the record amply supports the finding of the board that:

> \* \* \* applicant is engaged not in the sale of reports but solely in the furnishing of financial reporting services to its subscribers, as it likewise is that the reports submitted to its subscribers are merely incidental to and the ultimate result of its services. Such being the case, we are in full agreement with the Examiner that applicant's reports do not constitute goods in trade.

In our view, appellant's reports are a far cry from constituting goods in trade but are simply the conduit through which it renders services limited to individual subscribers. The reports are the essence or gist of appellant's services as they are unique for each subscriber. They are not goods or commodities in trade. In re Compute-Her-Look, Inc., 176 USPQ 445 (TTAB 1972). See also Ex Parte Bank of America National Trust and Savings Association, 118 USPQ 165 (Com. of Pat. 1958).

We observe that neither the examiner nor the board specified the statutory basis for refusing registration in the instant case except to conclude that the reports are not "goods" within the meaning of the Act. It is obvious, however, that since the present application was refused on the ground that appellant's reports are not "goods in trade" but in fact constitute a service, the decision below was manifestly predicated on sections 2 and 45 of the Trademark Act of 1946 (15 U.S.C. §§ 1052 and 1127). Although the Act does not define "goods," the definition of a "trademark" in section 45 declares that it is used "to identify goods" and section 2 refers to "goods in commerce." Both of these sections carry the necessary implication that a prerequisite to obtaining a trademark is that the subject matter to which it is applied must be goods. Presumptively at least, Congress, when it enacted the Trademark Act of 1946, was aware of Supreme Court decisions indicating that a trademark is applicable to a "vendible commodity." See Hearings on H.R. 9041 before House Subcomm. on Trade-Marks of House Comm. on Patents, 75th Cong., 3d Sess., p. 126 (1938); Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 673, 21 S.Ct. 270, 45 L.Ed. 365 (1901), and American Steel Foundries v. Robertson, Commissioner, 269 U.S. 372, 380, 46 S. Ct. 160, 70 L.Ed. 317 (1926).

Upon thorough assessment of appellant's briefs and the instant record, we are not persuaded of reversible error in the decision below. Accordingly, the decision is affirmed.

Affirmed.

LANE, J., dissents.