Mailed:
December 14, 2011

THIS OPINION IS A
PRECEDENT OF THE TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————————

**Trademark Trial and Appeal Board**
————————

In re Ameritox Ltd.
————————

Serial No. 77852949
———————

Elliot J. Stein of Stevens & Lee, P.C. for Ameritox Ltd.

Verna B. Ririe, Trademark Examining Attorney, Law Office 104 (Chris Doninger, Managing Attorney).
———————

Before Quinn, Bergsman and Kuczma,
Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Ameritox Ltd. ("applicant") filed a use-based application for the mark RX GUARDIAN, in standard character format, for "printed reports featuring medical laboratory results provided to medical practitioners for record keeping purposes," in Class 16. Applicant submitted a simulated "report of medical laboratory test results" as a specimen of use. A portion of the specimen displaying the mark is shown below.

Serial No. 77852949



## RxGuardian Report

9930 W. Hwy 80
Midland, TX 79706
Phone: (866) 287-7584
Fax: (432) 561-8619

**CLINIC INFORMATION**
Name: ANYTOWN PAIN CLINIC
Account: APCTX99
Address: 123 MAIN STREET, SUITE 100
ANYTOWN, TX 75555
Fax: 555-555-55555
Provider: Smith, John

**PATIENT INFORMATION**
Name: DOE, JANE
DOB: 10/30/1982
Height: 72 in.
Weight: 180 lbs.
Gender: Female
ID:

**SPECIMEN INFORMATION**
Requisition Number: M888888
Lab Accession Number: MP000999
Date Collected: 11/02/2008
Date Received by Lab: 11/03/2008 10:49 AM
Date Reported: 11/04/2008 11:17 AM
Report Version: 1

| Test Performed | Lab Result (ng/mL) | Assay Cutoff (ng/mL) | Normalized Value | Expected Range Low | Expected Range High | Range Comparison | Medication Comparison |
|---|---|---|---|---|---|---|---|
| **OPIATES** | | | | | | | |
| Opiates | | | | | | | |
| Opiates (IA) | 1572 | 50 | 1810 | 110 | 351 | Above Range | |
| Codeine (MS) | Negative | 100 | | | | | Consistent |
| Morphine (MS) | Negative | 100 | | | | | Consistent |
| Hydrocodone (MS) | 1312 | 100 | | | | | INCONSISTENT |
| Hydromorphone (MS) | 274 | 100 | | | | | INCONSISTENT |
| RESULTS EXPLANATION | The presence of both Hydrocodone and Hydromorphone has been confirmed. This is evidence of taking a Hydrocodone medication. Hydromorphone is a metabolite of Hydrocodone as well as a prescription drug. Possible sources include (but are not limited to) Lortab, Lorcet or Vicodin. Detection time for these drugs is 2-3 days.* | | | | | | |
| Oxycodone/Oxymorphone | | | | | | | |
| Oxycodone/Oxymorphone (IA) | Positive | 100 | | | | | |
| Oxycodone (MS) | 1897 | 100 | | | | | Consistent |
| Oxymorphone (MS) | 2000 | 100 | | | | | Consistent |
| **SYNTHETIC OPIOIDS** | | | | | | | |
| Methadone | | | | | | | |
| EDDP (IA) | Positive | 150 | | | | | Consistent |
| Methadone (IA) | 1742 | 150 | 150 | 53 | 209 | In Range | |
| Propoxyphene | | | | | | | |
| Propoxyphene (IA) | Negative | 180 | | | | | |
| **SEDATIVES/HYPNOTICS** | | | | | | | |
| Benzodiazepines | | | | | | | |
| Benzodiazepines (IA) | 115 | 100 | 190 | 163 | 381 | In Range | |
| Nordiazepam (MS) | 109 | 75 | | | | | Consistent |
| Oxazepam (MS) | 1250 | 75 | | | | | Consistent |
| Lorazepam (MS) | Negative | 75 | | | | | Consistent |
| Alprazolam (MS) | Negative | 75 | | | | | Consistent |
| Alphahydroxyalprazolam (MS) | Negative | 75 | | | | | Consistent |
| Barbiturates | | | | | | | |
| Barbiturates (IA) | Negative | 200 | | | | | |
| **STIMULANTS** | | | | | | | |
| Amphetamines | | | | | | | |
| Amphetamines (IA) | Negative | 800 | | | | | |

The report includes the disclaimer set forth below in reference to the asterisked comment in the "Results Explanation" box:

2

\* Disclaimer: This statement is meant to supplement the RxGuardian Report explaining any INCONSISTENT lab results. Patient care treatment decisions are dependent upon numerous factors. The Ameritox RxGuardian Report is another piece of information that the physician can utilize in determining appropriate patient care. The RxGuardian Report is not meant to be a sole determining factor for a patient's care, but to serve as an additional tool that the provider can review in conjunction with all other factors used in providing care for the patient.

The specimen looks like a sample form used to report the results of applicant's drug testing services.  The specimen does not appear to be a blank form or a standardized report that is offered for sale apart from the testing services provided by applicant.  Accordingly, the examining attorney refused registration on the ground that the proposed mark is not applied to "goods in trade" pursuant to Sections 1, 2 and 45 of the Trademark Act of 1946, 15 U.S.C. §§ 1051, 1052 and 1127.  In support of the refusal, the examining attorney submitted excerpts from applicant's website.[1]  On the "Rx Guardian Results Report" web page, applicant makes the following statement:

> To be an effective tool, urine drug testing results must be easy to understand and meaningful.  Ameritox gives you both in the comprehensive, information rich Rx Guardian results report.  We go beyond "detected" and "undetected" to provide a more complete picture of your patients' pain medication use. …
>
> Using the Ameritox Virtual Toxicologist[sm] (V-Tox), the Rx Guardian results report features helpful explanations of findings that are inconsistent with your patient's

---

[1] July 19, 2010 Office action.

> prescribed medication regimen.  For
> added ease, you can choose to receive
> printed copies of your results reports
> or view them securely online.
>
> The Rx Guardian results report is the
> most informative report for developing
> medication treatment plans that meet
> your patients' unique needs.

On the bottom of the web page, there is a link to a video:

"Rx Guardian[sm] Algorithm Overview and Interpreting the Rx

Guardian[sm] Results Report."

On the "Rx Guardian Technology and Process" web page,

applicant makes the following statement. (Emphasis added):

> The Ameritox Rx Guardian[sm] process
> identifies and quantifies the specific
> drug or metabolite present for a broad
> range of medications and illicits.
> Using our patented methods, **we then
> further analyze certain results**.  All
> this information helps you determine if
> a patient is taking his or her
> medication as prescribed.

Based on applicant's specimen and website, the

examining attorney concludes that "these reports are merely

a conduit through which the results of applicant's

laboratory services are reported.  The reports are simply

not available in commerce as 'goods in trade.'"[2]

In response, applicant argues that "medical

professionals use the 'RX GUARDIAN' reports to establish

---

[2] Examining Attorney's Brief, unnumbered page 2.

Serial No. 77852949

that they have adopted procedures to avoid diversion and abuse of [controlled substances]."[3] In support of its argument, applicant submitted an article entitled "Share The Risk Model," published in *Practical Pain Management* (October 2006)[4] to illustrate "the implications to physicians of prescription of such medications."[5] In this regard, applicant makes the following argument:

> Applicant's reports provide documentary evidence that the physician has exercised a due standard of care in the prescription of pain medications. In adversarial or investigative situations, Applicant's reports provide independent evidence regarding patient's medication status: "The urine drug test serves as documentation that the physician is evaluating the prescribing of drugs to his patient. (Exhibit A at ¶33)."[6]

Exhibit A is the "Share The Risk Model" article referenced above. The reference to Exhibit A specifically refers to the benefits of drug testing in general, not to applicant's RX GUARDIAN report. Because the article was written before applicant's first use of its mark, we do not view applicant to be arguing that the article says or implies anything about applicant's reports. Rather, we

---

[3] Applicant's June 14, 2010 Response.
[4] *Id.* Applicant claimed first use of its mark at least as early as January 7, 2009 and, therefore, the article was published before applicant began using its mark.
[5] *Id.*
[6] Applicant's June 14, 2010 Response.

view applicant as arguing that the reports it provides have utility for physicians apart from being a means for reporting the results of tests.

The refusal that the mark is not used on "goods in trade" is predicated on Sections 1, 2 and 45 of the Trademark Act. *In re Shareholders Data Corp.,* 495 F.2d 1360, 181 USPQ 722, 723 (CCPA 1974). Ancillary items used to conduct business, such as invoices, forms and reports, do not constitute "goods in trade." *See e.g., In re Shareholders Data Corp.,* 181 USPQ at 723 (finding that reports are not goods in trade, where applicant is not engaged in the sale of reports, but solely in furnishing financial reporting services, and reports are merely conduits through which services are rendered).

According to the record, applicant's RX GUARDIAN mark identifies a drug testing and reporting service. There is no evidence supporting applicant's contention that the reports are sold separately or have any independent value apart from applicant's testing services (*e.g.,* the reports aid a physician in establishing for investigators or others that he/she engages in proper practices regarding the prescribing of medicines). Applicant is not engaged in the sale of reports to others, but solely in the furnishing of drug testing and reporting services. In fact, applicant

uses the superscript "SM" for service mark, not the superscript "TM" for trademark, when referencing the RX GUARDIAN reports. Accordingly, we find that the RX GUARDIAN forms or reports are the conduit through which applicant offers or renders its drug testing services and presents the results. *See In re Shareholders Data Corp.,* 181 USPQ at 723; *In re MGA Entm't, Inc.*, 84 USPQ2d 1743, 1747 (TTAB 2007) (stating that applicant's trapezoidal cardboard boxes for toys, games, and playthings held to be merely point of sale containers for applicant's primary goods and not separate goods in trade, where there was no evidence that applicant is a manufacturer of boxes or that applicant is engaged in selling boxes as commodities in trade); *In re Compute-Her-Look, Inc.,* 176 USPQ 445, 446 (TTAB 1972) (finding that reports and printouts are not goods in trade where they are merely the means by which the results of a beauty analysis service is transmitted and have no viable existence separate and apart from the service); *Ex parte Bank of Am. Nat'l Trust and Sav. Ass'n*, 118 USPQ 165 (Comm'r Pats. 1958) (mark not registrable for passbooks, checks, and other printed forms, where forms are used only as "necessary 'tools' in the performance of [banking services], and [applicant] is not engaged either in printing or selling forms as commodities in trade.").

Without any corroboration, applicant argues that "Rx Guardian Reports are purchased by doctors and other medical professionals – who can easily obtain the laboratory tests over the Internet – to protect themselves against claims arising from improper script-writing and failure of treatment caused by patients who fail to take prescribed medicines or 'supplement' prescribed medicines with illicit and other drugs." (Emphasis in the original).[7] However, it is not the report *per se* that protects the medical professionals; it is applicant's underlying drug testing services that are documented in applicant's reports that offer the protection. Further, even if we were to view applicant's reports as providing more information or better analysis than other drug testing services available to physicians, this does not mean the reports are goods in trade sold separately from applicant's drug testing services.

In its reply brief, applicant argues that the examining attorney "ignores evidence presented by Applicant in support of the Application."[8] The only evidence that applicant submitted was the "Share The Risk Model" article referenced above. The essence of that article is the need

---

[7] Applicant's Brief, p. 3.
[8] Applicant's Reply Brief, p. 3.

to document the use of proper and improper use of prescription drugs by patients. There is no evidence to support applicant's argument that its printed report is anything other than an integral part of its drug testing and reporting services.

Applicant also argues that the examining attorney "offers no support for her assertion that Rx Guardian Reports are not sold or marketed apart from their use in conjunction with patient care nor is there any evidence that the reports have independent value. . ."[9] We disagree. The excerpts from applicant's website demonstrate that RX GUARDIAN is a drug testing and reporting service. There is nothing in the website excerpts that advertises the sale and use of RX GUARDIAN reports separate and apart from the drug testing and reporting services. While the examining attorney bears the burden of providing evidence to support the refusal of registration, that burden does not require proof of a negative (*i.e.*, proof that applicant's goods are *not* sold separately). It is applicant that essentially claims that the reports are independent goods in trade identified by its mark, and the examining attorney's burden

---

[9] *Id.* at 3-4.

is met by establishing the absence of evidence to support applicant's position.

Finally, applicant argues that the printed reports are "not only vendible products but regularly vended to doctors and medical professionals.  They are goods separate and apart from Applicant's laboratory services and a buying decision is made by those doctors and medical professionals based upon the source of those reports."[10]  This argument is not supported by the evidence of record which shows that the reports merely provide information tailored to the particular test results.

The fundamental question in this case is what is being offered for sale under the RX GUARDIAN mark?  The product that is being offered for sale constitutes the "goods in trade" for which registration is intended to provide protection and which should be listed in the description of goods and services.  *See In re SCM Corporation,* 209 USPQ 278, 280 (TTAB 1980).  In this regard, there is no evidence that applicant is engaged in selling RX GUARDIAN printed reports apart from its services; rather the reports are part and parcel of applicant's services.  There is no evidence regarding applicant's advertising of RX GUARDIAN

---

[10] *Id.* at 7.

10

printed reports.  In addition, there is no evidence that medical professionals actually use the RX GUARDIAN printed reports as asserted by applicant.  These are factual matters about which applicant should have furnished as much information as is available to overcome the evidence submitted by the examining attorney.

In view of the foregoing, we find that the reports are not "goods in trade."

**Decision**:  The refusal to register is affirmed.