# United States Court of Appeals for the Federal Circuit

---

**LENS.COM, INC.,**
*Appellant,*

v.

**1-800 CONTACTS, INC.,**
*Appellee.*

---

2011-1258

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Cancellation No. 92,049,925.

---

Decided: August 3, 2012

---

ANTHONY J. DE GIDIO, Attorney at Law, of Maumee, Ohio, argued for appellant.

MARK A. MILLER, Holland & Hart, LLP, of Salt Lake City, Utah, argued for appellee.

---

Before NEWMAN, LINN, and MOORE, *Circuit Judges.*

LINN, *Circuit Judge.*

Lens.com, Inc. ("Lens.com") appeals a decision of the Trademark Trial and Appeal Board ("Board") granting 1-800 Contacts, Inc.'s ("1-800 Contacts") motion for summary judgment and ordering the cancellation of Lens.com's registration for the mark LENS. Because the Board applied the correct test for determining "use in commerce" of a mark for software, and because there is no genuine issue of material fact that Lens.com did not use the mark LENS in commerce in connection with software, this court affirms.

## I. BACKGROUND

On July 21, 1998, the United States Patent and Trademark Office ("PTO") issued Registration No. 2,175,334 ("'334 Registration") to Wesley-Jessen Corporation ("Wesley-Jessen") for the mark LENS in connection with *"computer software* featuring programs used for electronic ordering of contact lenses in the field of ophthalmology, optometry and opticianry"—goods under class 9 (IC 009). '334 Registration (emphasis added). In January 2001, Lens.com, an online retailer of contact lenses and related products, applied for the mark LENS in connection with *"retail store services* featuring contact eyewear products rendered via a global computer network." Office Action of Sept. 18, 2001 at 2, Application No. 78/076812 ("'812 Application") (emphasis added). The PTO cited Wesley-Jessen's '334 Registration as a bar to allowance based on likelihood of consumer confusion. *Id.* at 1-2. The examining attorney also refused registration of Lens.com's mark as merely descriptive of the identified services. *Id.* at 2-3.

On March 18, 2002, Lens.com initiated a cancellation proceeding against Wesley-Jessen's '334 Registration. On September 12, 2002, Wesley-Jessen assigned its '334 Registration to Lens.com, and Lens.com withdrew its cancellation petition pursuant to the terms of a settlement agreement. Lens.com thus obtained the '334 Registration for the mark LENS in connection with "computer software featuring programs used for electronic ordering of contact lenses in the field of ophthalmology, optometry and opticianry."

In September 2008, 1-800 Contacts filed Cancellation No. 92,049,925 alleging that Lens.com fraudulently obtained or alternatively abandoned the mark LENS under the '334 Registration because Lens.com never sold or otherwise engaged in the trade of computer software. 1-800 Contacts filed a motion for summary judgment on the claim of abandonment, which the Board granted on the ground that Lens.com's "software is merely incidental to its retail sale of contact lenses, and is not a 'good in trade,' i.e., 'solicited or purchased in the market place for [its] intrinsic value.'" *1-800 Contacts, Inc. v. Lens.com*, Cancellation No. 92,049,925, slip op. at 8, 10 (T.T.A.B. May 18, 2010). The Board denied Lens.com's motion for reconsideration. *1-800 Contacts, Inc. v. Lens.com*, Cancellation No. 92,049,925, slip op. at 6 (T.T.A.B. Dec. 8, 2010) ("*Board Decision*"). On January 26, 2011, the PTO issued an order cancelling the '334 Registration. Lens.com appealed, and this Court has jurisdiction pursuant to 15 U.S.C. § 1071(a) and 28 U.S.C. § 1295(a)(4)(B).

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate where the movant has established that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law. We review the Board's decision to grant summary judgment *de novo*." *Odom's Tenn. Pride Sausage, Inc. v. FF Acquisition, L.L.C.*, 600 F.3d 1343, 1345 (Fed. Cir. 2010) (internal citation omitted).

## B. "Use" of a Mark Under 15 U.S.C. § 1127

### i. The Parties' Arguments

Lens.com argues that the Board erred in granting summary judgment because "use in Commerce" does not require the actual sale of the goods. Appellant's Br. 9 (citing *White v. Paramount Pictures Corp.*, 108 F.3d 1392, 1997 WL 76957, at *3 (Fed. Cir. 1997) (appearing in the Federal Reporter's "Table of Decisions Without Reported Opinions") ("[U]se in commerce" means "commercial use which is typical in a particular industry. Additionally, *the definition should be interpreted with flexibility so as to encompass genuine, but less traditional, trademark uses*." (citing S. Rep. No. 100-515, at 44-45 (1988) (emphasis added))). Lens.com asserts that the "distribution of . . . Software for end-users over the Internet satisfies the 'use in commerce' jurisdictional predicate" for a mark for software. Appellant's Br. 12. According to Lens.com, there is no public awareness requirement to "use," but to the extent public awareness is required, "summary judgment was improper because there was no evidence presented on the mindset . . . of the internet users when they visited the Lens.com website." Appellant's Reply Br. 9.

1-800 Contacts counters that Lens.com abandoned the trademark LENS due to nonuse because it does not offer software to consumers as a good in trade. Appellee's Br. 6. 1-800 Contacts argues that "incidental items that an applicant uses in conducting business . . . as opposed to items sold or transported in commerce for use by others, are not 'goods in trade.'" Appellee's Br. 6 (citing TMEP § 1202.06 and *In re Shareholders Data*, 495 F.2d 1360,

1361 (CCPA 1974)).  According to 1-800 Contacts, "[t]he fact that [Lens.com] owns a website through which retail sale services are provided does not mean that it offers software as a good to the public."  Appellee's Br. 8.  1-800 Contacts asserts that "[i]f there is any 'software' to speak of, it is only ancillary to [Lens.com]'s online retail services"; Lens.com "is no more in the business of software than it is in the business of manufacturing cardboard boxes in which the contact lens products purchased through its retail services are shipped."  Appellee's Br. 8-9.  1-800 Contacts also argues that, "even if some applet or other software component is placed on to [sic] customers' computers in order to facilitate their purchase of contact lenses . . . , these customers are completely unaware . . . that they are the recipient of downloaded 'software' . . . [, and] could not possibly associate the LENS mark with a source of software."  Appellee's Br. 12.  According to 1-800 Contacts, "[w]ithout any public awareness . . . the 'transport' or purported downloading of a software component or applet to consumers' computers cannot create rights sufficient to support a federal trademark registration."  Appellee's Br. 12-13.

## ii.  Analysis

15 U.S.C. § 1064 provides in pertinent part that "[a] petition to cancel a registration of a mark . . . may . . . be filed . . . (3) At any time if the registered mark . . . has been abandoned."  In turn, 15 U.S.C. § 1127 (emphasis added) provides:

> A mark shall be deemed to be 'abandoned' . . . (1) When its use has been discontinued with intent not to resume such use. . . . Nonuse for 3 consecutive years shall be prima facie evidence of abandonment.  *'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade,* and not made merely to reserve a right in a mark.

In addition, § 1127 (emphasis added) defines "use in commerce" as:

> The bona fide use of a mark in the ordinary course of trade . . . . [A] mark shall be deemed to be in use in commerce –
>
> (1) on goods when –
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are *sold or transported in commerce* . . . .

The statute is clear that the actual sale of goods is not required to satisfy § 1127's "use in commerce" requirement, provided that the goods are "transported" in commerce. § 1127; *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir. 2001) ("The term 'use in commerce' as used in the Lanham Act 'denotes Congress's authority under the Commerce Clause rather than an intent to limit the [Lanham] Act's application to profit making activity.'" (quoting *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 92-93 (2d Cir. 1997)). However, "not every transport of a good is sufficient to establish ownership rights in a mark." *Id.* at 1196; *Gen. Healthcare Ltd. v. Quashat*, 364 F.3d 332, 337 (1st Cir. 2004). "In assessing rights stemming from transportation, courts and commentators have required an element of public awareness of the use." *Gen. Healthcare*, 364 F.3d at 335.

It is not contested that Lens.com does not software. The focus of the appeal is, thus, whether Lens.com's software is a "good" that is "transported in commerce." Our predecessor court established that an article does not qualify as a good in trade when that article is "simply the conduit through which [the applicant] renders services," i.e., is "the essence or gist of [the applicant's] services." *Shareholders Data*, 495 F.2d at 1361; *see also In re Compute-Her-Look, Inc.*, 176 U.S.P.Q. 445, 446-47 (T.T.A.B. 1972); *Ex Parte Bank of Am. Nat'l Trust & Sav. Ass'n*, 118 U.S.P.Q. 165, 165 (Comm'r Pats. 1958). It is also well established that when an article "has no independent value apart from the services," such article is not likely to be an independent good in trade. *Shareholders Data*, 495 F.2d at 1360.

In *Shareholders Data*, the applicant applied to register the trademark "PERSONALYST" in connection with "periodic, computer-prepared reports on the valuations of subscribers' securities portfolios." 495 F.2d at 1360. The applicant already possessed a registration for the service mark "PERSONALYST" in connection with its financial reporting services. *Id.* Our predecessor court held that the applicant was not entitled to a trademark because the reports "[we]re not goods or commodities in trade":

> [A]ppellant's reports are a far cry from constituting goods in trade but are *simply the conduit through which it render*s *services* limited to individual subscribers. The reports are *the essence or gist of appellant's services* as they are unique to each subscriber.

*Id.* at 1361 (emphases added). The court also based the holding on the fact that the reports were "not sold separately and ha[d] no independent value apart from the services." *Id.* at 1360.

In *Compute-Her-Look*, the Board considered whether an applicant was entitled to a registration for the trademark "COMPUTE-HER-LOOK" for use on computer printouts reflecting beauty advice tailored to particular customers. 176 U.S.P.Q. at 445. The applicant already owned a registration for "COMPUTE-HER-LOOK" as a service mark. *Id.* The Board held that the applicant was not entitled to register the trademark because "these reports and similar material are *merely the means by which applicant transmits the results of its . . . service,* and *they are so intricably tied to and associated with this service that they have no viable existence or marketable value separate and apart there from.*" *Id.* at 446-47 (emphases added).

In *Bank of America National Trust and Savings*, the Board considered whether the applicant was entitled to a registration for a trademark (a Bank of America emblem) for use on travelers' checks and other correspondence forms. 118 U.S.P.Q. at 165. The Commissioner of Patents affirmed the Board's refusal of registration because:

> The forms which applicant has listed in its application are *necessary adjuncts* to the rendering of its . . . services; and use of the mark on such forms *identifies and distinguishes applicant's . . . services.* Since applicant's business is a banking service in which it uses the printed forms as *necessary "tools" in the performance of such service,* and it is not engaged either in printing or selling forms as commodities in trade, the examiner properly refused registration of the mark for the commodities . . . .

*Id.* (first emphasis in original; other emphases added).

While there is ample case law discussing goods in trade in the context of traditional articles used or rendered in conjunction with services, *see* TMEP § 1202.06 (compiling cases), there is little precedent on whether, in the context of Internet services, an Internet service providers' *software* is an independent good in commerce, or is merely incidental to the Internet services. In *Planetary Motion*, the Eleventh Circuit held that "[t]he distribution of . . . Software for end-users over the Internet satisfies the 'use in commerce' jurisdictional predicate." 261 F.3d at 1194-95. In that case, the court held that the "Coolmail Software" at issue was sufficiently transported in commerce where "[t]he Software was posted under a filename bearing the 'Coolmail' mark on a site accessible to anyone who had access to the Internet" and "there [wa]s evidence that members of the targeted public *actually associated the mark Cooolmail with the Software to which it was affixed*." *Id.* at 1196 (emphasis added).

While we agree with the Eleventh Circuit that the distribution of Software over the internet *can* satisfy the jurisdictional predicate for "use in commerce"—such as in *Planetary Motion* where consumers consciously downloaded the Coolmail software—whether consumers actually associate a mark with *software*, as opposed to other *services*, is a factual determination that must be conducted on a case-by-case basis. Relevant factors to consider include whether the software: (1) is simply the conduit or necessary tool useful only to obtain applicant's services; (2) is so inextricably tied to and associated with the service as to have no viable existence apart therefrom; and (3) is neither sold separately from nor has any independent value apart from the services. *See Shareholders Data*, 495 F.2d at 1360-61; *In re MGA Entm't Inc.*, 84 U.S.P.Q.2d 1743, 1746-47 (T.T.A.B. 2007) (boxes used to store puzzle pieces did not constitute goods in trade because "consumers [we]re likely to regard the puzzle boxes as nothing more than point of sale containers, as

opposed to separate goods in trade"); *Compute-Her-Look*, 176 U.S.P.Q. at 446-47; *Bank of America*, 118 U.S.P.Q. at 165.  None of these factors need necessarily be dispositive, but each may shed light on whether an applicant's software is an independent *good* being "sold or transported in commerce."

### iii.  Application

Here, Lens.com's software is merely the conduit through which it renders its online retail services. Lens.com's customers utilize the website (and thereby the software associated therewith) to avail themselves of Lens.com's services.  Lens.com's software is inextricably intertwined with the *service* that Lens.com provides to its customers—the software facilitates the customers' online order, which is unique to each customer depending on the links he or she clicks on, the screens viewed, and the ultimate decision of whether or not to order contacts. While Lens.com's software may provide greater value to Lens.com's online retail *services* by enhancing the overall consumer experience, there is no evidence that it has any independent value apart from in rendering the service. *See Shareholders Data*, 495 F.2d at 1361; *In re MGA Entm't Inc.*, 84 U.S.P.Q.2d at 1746-47; *Compute-Her-Look*, 176 U.S.P.Q. at 446-47; *Bank of America*, 118 U.S.P.Q. at 165.

This case is distinguishable from *Planetary Motion*, upon which Lens.com primarily relies.  In that case, the Coolmail Software was the primary product in commerce: "[T]he distribution [of the software] was widespread"; there was ample evidence that the targeted users *associated the mark with the software* (one company even requested permission to license the software under the Coolmail mark); the software was accompanied by a "user manual . . . indicat[ing] that the *Software* was named 'Coolmail'"; and Coolmail software was "incorporated into

several versions of a product that was in fact *sold* world-wide." 364 F.3d at 1196-97 (emphases added). In contrast, here, the record reflects that the LENS mark is used only in connection with the sale and transportation of *contact lenses* via the Internet. Although the ordering service is facilitated through software, the record does not indicate that consumers have any reason to be aware of any connection between the LENS mark and Lens.com's software. Lens.com's website clearly states that "Lens.com is a contact lens replacement company, and *a direct to consumer marketer of contact lenses*." J.A. 1167-91 (website printouts) (emphasis added). The Lens.com homepage clearly denotes its "Services" to be, *inter alia,* "Reorders"; and its "Goods" to be the various brands of *contact lenses. Id.* Nowhere on the website is there any indication that the LENS mark is being used in association with software. Nor do the consumer testimonials in the record help Lens.com. While the testimonials evidence that Lens.com's customers are generally very pleased with Lens.com's ordering *service*, there is no evidence of any consumer awareness that the LENS mark is being used in connection with software. *See* J.A. 1192-95 (customer testimonials). Even viewing the evidence in a light most favorable to Lens.com, there is no genuine issue of material fact in this case that Lens.com's customers actually associated the mark LENS with software.

Lens.com curiously also relies on this court's non-precedential opinion in *White*—a case where the Board *refused* registration. In *White*, this court affirmed a decision of the Board refusing to register the mark "THE ROMULANS" to the applicant (the principal member of a rock-and-roll band called "The Romulans") for promotional connect-the-dots games. 1997 WL 76957, at *1. Although the court stated in *White* that "the definition [of 'use in commerce'] should be interpreted with flexibility so as to encompass genuine, but less traditional, trademark uses," *id.* (citing Sen. Rep. No. 100-515, at 44-45 (1988)),

this language does not imply, as Lens.com suggests, that trademark protection may extend to goods that are merely incidental to goods or services in commerce. The court held in *White* that the "sporadic, casual and nominal" use of the games under the facts of that case did not amount to use in the ordinary course of trade. *Id.* at \*3.

For the foregoing reasons, this court concludes that the Board properly determined that the mark LENS is not in "use in commerce" in association with software. The Board's decision on the issue of abandonment is, thus, affirmed.

## C.  Grounds for Cancellation

Lens.com also argues that this court must overturn the Board's determination on abandonment because the board erroneously relied solely on Lens.com's specimens of use as the ground for cancellation. Appellant's Br. 15 (citing *ER Marks, Inc. v. Quarles Petroleum, Inc.*, 2007 WL 1620777 (T.T.A.B. May 30, 2007) (nonprecedential) ("[P]etitioner is essentially arguing that the specimens of use are unacceptable. However, the question of whether the signage would constitute an acceptable specimen of use, is solely an ex parte examination issue and does not constitute a valid ground for cancellation.")). Lens.com's argument lacks merit because the Board *did not* rely solely on the specimens of use, as Lens.com alleges, *Board Decision* at 9 ("[T]he specimens are just one piece of the puzzle"), but rather properly relied on the entire application file as directed by the Board's regulations:

> (b) Application files. (1) The file . . . of each registration against which a petition or counterclaim for cancellation is filed forms part of the record of the proceeding without any action by the parties and *reference may be made to the file for any relevant purpose.*

37 C.F.R. § 2.122(b)(1) (emphasis added). In *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352 (Fed. Cir. 2010), this court held: "The unambiguous language of 37 C.F.R. § 2.122(b) provides that the *entire file of the registration at issue is automatically part of the record* [in a cancellation proceeding], without any action necessary by the parties . . . and the Board was required to consider this evidence in determining whether [the party seeking cancellation] had met its burden . . . ." *Id.* at 1357 (emphasis added). Because the Board properly considered Lens.com's entire application file and did not rely solely on the specimens of use contained therein, *Board Decision* at 9, we decline to disrupt the Board's determination on this ground.

## III. CONCLUSION

For these reasons, this court affirms the Board's decision granting summary judgment in favor of 1-800 Contacts.

## AFFIRMED