THIS OPINION IS
A PRECEDENT OF THE
TTAB

Mailed:  February 28, 2013

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Thomas White International, Ltd.
_____

Serial No. 77080379
_____

Charles T. Riggs Jr. of Patula & Associates for Thomas White International, Ltd.

Chrisie Brightmire King, Trademark Examining Attorney, Law Office 109 (Dan Vavonese, Managing Attorney).
_____

Before Quinn, Ritchie and Masiello,
Administrative Trademark Judges.

Opinion by Quinn, Administrative Trademark Judge:

Thomas White International, Ltd. filed, on January 10, 2007, an intent-to-use application to register the mark EMPOWERING THE INVESTOR (in standard characters) (INVESTOR disclaimed) for

> Electronic publications, namely, reports featuring investment management and investment research information, and financial research and equity research information recorded on computer media (in International Class 9).

Applicant subsequently filed a statement of use, alleging first use anywhere and first use in commerce on October 31, 2009. The specimen supporting the statement of use is a 52-page electronic document, as discussed more fully below, captioned "Annual Report" for investment funds named "Thomas White Funds," for which applicant is the advisor.

The trademark examining attorney refused registration under Sections 1, 2 and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052 and 1127, on the ground that applicant's mark is not used in connection with "goods in trade." The examining attorney also refused registration based on applicant's failure to comply with the requirement to submit an acceptable specimen showing use of the mark in commerce in connection with the identified goods.

When the refusal to register was made final, applicant appealed. Applicant and the examining attorney filed briefs.

Applicant argues that the Office has miscomprehended the nature of applicant's specimen, which it states is not an annual report:

> The Office continues to erroneously assume
> and believe that a report on investment
> funds published annually, hence an "annual
> report" on the funds, which is provided to
> investors, prospective investors, and the
> consuming public in general, somehow equates
> to an "annual report" of the company itself
> provided internally to the shareholders of
> the company as part of routine corporate

> activity.... The specimen is not an annual report on Applicant's company, is not an incidental item used to conduct daily business, does not provide utility only to Applicant, is not a publication provided to Applicant's own shareholders, and is not an internal report. (Appeal Brief, pp. 6-7).

The specimen of use, according to applicant, is an electronic pdf (portable document format) publication published on applicant's website, and is available as a download or by email. According to applicant, the publication features investment and financial information relating to specific investment funds, and not to applicant's company which manages the funds; the reports are specifically prepared and distributed to the public to provide financial and investment information to others for their use in deciding whether or not to purchase the funds or whether or not to recommend the purchase of the funds to others. Because the report is published once a year, the report is captioned as an "Annual Report." Applicant states that its reports "are sold, transported or distributed in commerce for use by others (e.g., investors, potential investors, and others such as brokers) and provide a use or utility to others (e.g., the reports are used to help investors or potential investors decide whether to invest in the funds, or used to help brokers decide if they would recommend the funds to their clients)." (Brief, p. 9).

3

The examining attorney maintains that the specimen is an annual report of corporate activity for applicant's family of mutual funds, and is incidental to conducting applicant's own business. In this connection the examining attorney requests the Board to take judicial notice of the legal dictionary definition of the word "annual report";[1] the examining attorney notes that the content of applicant's report is identical to the content usually found in an "annual report," and that applicant's report has been reviewed, as is legally required for a company's annual report, by an outside auditor. These types of reports, like other incidental items used to conduct daily business, are not goods in trade where an applicant is not engaged in the actual sale of reports, but rather engaged solely in furnishing services which are documented in the reports; that is, the reports are merely conduits through which services are rendered. In the examining attorney's words:

> The purpose of the report is to promote and
> provide information about applicant's own
> investment funds. Although the applicant
> argues in its brief that it includes
> additional information about global markets,
> the examining attorney urges that this is
> merely background information regarding the
> portfolio strategy for applicant's
> investment services. Therefore, this mark

---

[1] The request in the examining attorney's brief is granted inasmuch as the definition is taken from a dictionary existing in a printed format. *In re Hotels.com, L.P.*, 87 USPQ2d 1100, 1103 (TTAB 2007), *aff'd*, 573 F.3d 1300, 91 USPQ2d 1532 (Fed. Cir. 2009); and *In re Jonathan Drew, Inc.*, 97 USPQ2d 1640, 1642 n.4 (TTAB 2011).

> is being used in the report to promote
> applicant's investment fund services, rather
> than being used as a trademark for
> electronic publications. (Brief, unnumbered
> p. 10).[2]

The record shows that applicant, Thomas White International, Ltd., is the advisor to Thomas White Fund Family; as advisor, applicant manages the funds by way of making investment decisions with the monies invested by the funds' customers. The specimen comprises a 52-page document; the cover is captioned with "Thomas White Funds," and below that with "Annual Report October 31, 2009." On page 2 is a "Message to

---

[2] Applicant, in its brief, "notes that if this entire appeal could be mooted by simply amending the Class 9 goods to related Class 41 [sic] services, then Applicant would be open to such an amendment." (Brief, p. 12, n.2). In this regard we note that the application earlier included not only the electronic publications in Class 9, but also services identified in Class 36 as follows: "investment management services, including management of asset and mutual funds; investment research services; financial research services; providing investment research information; financial research, namely, equity research." In its response filed October 27, 2008, applicant deleted Class 36 from the application. The examining attorney has stated that "[t]he first specimen page shows the mark used as a service mark" and that on two other pages "[t]he use of the mark...appear[s] to be advertisements for the applicant's investment services." (Brief, unnumbered p. 9). In saying this, the examining attorney also noted applicant's use of "SM" after the proposed mark. No request to remand was filed and there is no basis upon which to address applicant's suggestion. Even if a request for remand had been filed, at this late juncture applicant would not be able to show good cause. *See* TBMP § 1209.04 (3d ed. rev. 2012) (in determining whether good cause has been shown, the Board will consider both the reason given and the point in the appeal at which the request for remand is made). In any event, applicant should note that once the identification has been amended to restrict the goods or services, it cannot be expanded later. *See In re Swen Sonic Corp.*, 21 USPQ2d 1794 (TTAB 1991). We note, however, that nothing in this opinion precludes applicant from filing another application seeking to register the mark for the services it provides or intends to provide.

Shareholders" (from Thomas S. White, Jr., identified as "the Fund's President and Portfolio Manager"), explaining applicant's role as the advisor to the Thomas White Funds. Mr. White states that "[W]e feel it is important that you are kept informed about our progress as a business." Mr. White gives "Our 2010 Outlook," entailing several forward-looking statements about the economy, and concludes the report with "Our Portfolio Strategy." The report includes a section captioned "Performance Review" of two individual funds, namely Thomas White American Opportunities Fund and Thomas White International Fund, indicating the specific return on investment. In connection with each fund, the specific stock holdings in publically-traded companies are listed by sector. The table of contents also lists other sections, including "Statements of Assets and Liabilities," "Statement of Changes in Net Assets," "Notes to Financial Statements," "Tax Information," "Financial Highlights," "Disclosure of Fund Expenses," "Quarterly Portfolio Schedule and Proxy Voting Policies," and "Report of Independent Registered Public Accounting Firm." Applicant's report provides financial and investment information apart from the two identified mutual funds that it manages. The report provides investment, financial and equity research information relating to global markets in China, India and Russia, information relating to multinational corporations, charts relating to various data of

developed and emerging markets, discussions of growth in both emerging markets and developed countries, growth in the economies of Europe, Japan, China and India, assessments of the risks in U.S. dollar denominated assets, and charts providing data relating to the growth of world stock markets.  The accounting firm auditing the funds' activities indicated that the "accompanying statements of assets and liabilities, including the investment portfolios, and the related statements of operations and changes in net assets and the financial highlights present fairly, in all material aspects, the financial position of [Thomas White funds]...the results of each of their operations for the year ended, the changes in each of their net assets for each of the two years in the period then ended and the financial highlights for each of the five years in the period then ended, in conformity with accounting principles generally accepted in the United States of America."

We find that the document captioned "Annual Report" does not constitute a "good in trade" and, thus, affirm the refusal. Our reasons follow.

Section 45 of the Trademark Act, 15 U.S.C. § 1127, defines "use in commerce" as:

> The bona fide use of a mark in the ordinary
> course of trade...[A] mark shall be deemed
> to be in use in commerce –
> (1)  On goods when –

> (A)  It is placed in any manner on goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B)  The goods are sold or transported in commerce.

Section 45 also defines a "trademark" as a "word, name, symbol, or device, or any combination thereof" that is used or intended to be used in commerce by a person "to *identify and distinguish his or her goods* (emphasis added)."  Before rights in a term as a trademark can be established, the subject matter to which the term is applied must be "goods in trade."  Incidental items that an applicant uses in conducting its business (such as letterhead, invoices, and business forms), as opposed to items sold or transported in commerce for use by others, are not "goods in trade."  *See In re Shareholders Data Corp*., 495 F.2d 1360, 181 USPQ 722 (CCPA 1974) (finding that reports are not goods in trade, where applicant is not engaged in the sale of reports, but solely in furnishing financial reporting services, and reports are merely conduit through which services are rendered); *In re Ameritox Ltd.*, 101 USPQ2d 1081, 1085 (TTAB 2011) (finding no evidence that applicant was engaged in selling printed reports apart from its laboratory testing services and that the reports were part and parcel of the services); *In re*

8

*MGA Entm't, Inc.*, 84 USPQ2d 1743 (TTAB 2007) (applicant's trapezoidal cardboard boxes for toys, games, and playthings held to be merely point of sale containers for applicant's primary goods and not separate goods in trade, where there was no evidence that applicant is a manufacturer of boxes or that applicant is engaged in selling boxes as commodities in trade); *In re Compute-Her-Look, Inc.,* 176 USPQ 445 (TTAB 1972) (finding that reports and printouts are not goods in trade, where they are merely the means by which the results of a beauty analysis service is transmitted and have no viable existence separate and apart from the service); *Ex parte Bank of Am. Nat'l Trust and Sav. Ass'n*, 118 USPQ 165 (Comm'r Pats. 1958) (mark not registrable for passbooks, checks, and other printed forms, where forms are used only as "necessary 'tools' in the performance of [banking services], and [applicant] is not engaged either in printing or selling forms as commodities in trade.").

The determination of whether applicant's investment reports are independent goods in trade, or merely incidental to the investment services, is a factual determination to be made on a case-by-case basis. *See Lens.com, Inc. v. 1-800 Contacts, Inc.,* 686 F.3d 1376, 1381-82, 103 USPQ2d 1672, 1676 (Fed. Cir. 2012). Factors to consider include whether the investment report: (1) is simply the conduit or necessary tool useful only to

obtain applicant's services; (2) is so inextricably tied to and associated with the services as to have no viable existence apart therefrom; and (3) is neither sold separately from nor has any independent value apart from the services. *Id*. A more detailed review of some of the relevant case law referenced above (none of which is cited or addressed in applicant's brief) will be helpful in making such determination.

The predecessor of our primary reviewing court established that an article does not qualify as a good in trade when that article is "simply the conduit through which [the applicant] renders services," i.e., is "the essence or gist of [the applicant's] services." *In re Shareholders Data*, 181 USPQ at 722. The court also stated that when an article "has no independent value apart from the services," such article is not likely to be an independent good in trade. *Id*. In *Shareholders Data*, the applicant applied to register the trademark PERSONALYST in connection with "periodic, computer-prepared reports on the valuations of subscribers' securities portfolios." The report contained information reflecting the high and low prices of securities as well as dividend rates, current yields and price earning ratios and listed the performance of leading market indicators for various periods of time. The applicant already owned a registration for the service mark PERSONALYST in connection with its financial

reporting services. The court held that the applicant was not entitled to a trademark because the reports were not goods or commodities in trade: "[A]ppellant's reports are a far cry from constituting goods in trade but are simply the conduit through which it renders services limited to individual subscribers. The reports are the essence or gist of appellant's services as they are unique to each subscriber." *Id.*

In *Compute-Her-Look*, the Board considered whether an applicant was entitled to a registration for the trademark COMPUTE-HER-LOOK for use on computer printouts reflecting beauty advice tailored to particular customers. The applicant already owned a registration for "COMPUTE-HER-LOOK" as a service mark for computerized beauty analysis and beauty reporting services. The Board stated that the applicant's "reports and computer printouts do not constitute merchandise and goods that are solicited or purchased in the market place for their intrinsic value." *Compute-Her-Look*, 176 USPQ at 446. The Board went on to hold that the applicant was not entitled to register the trademark because "[t]hese reports and similar material are merely the means by which applicant transmits the results of its beauty analysis service, and they are so intricably [sic] tied to and associated with this service that they have no viable existence or marketable value separate and apart therefrom." *Id.* at 446-47.

11

In the case of *Ameritox Ltd.*, the Board found that printed reports featuring medical laboratory results provided to medical practitioners for record keeping purposes were not "goods in trade." In that case, the Board stated the following:

> The fundamental question in this case is what is being offered for sale under the RX GUARDIAN mark? The product that is being offered for sale constitutes the "goods in trade" for which registration is intended to provide protection and which should be listed in the description of goods and services. *See In re SCM Corp.*, 209 USPQ 278, 280 (TTAB 1980). In this regard, there is no evidence applicant is engaged in selling RX GUARDIAN printed reports apart from its services; rather the reports are part and parcel of applicant's services. There is no evidence regarding applicant's advertising of RX GUARDIAN printed reports.

*Ameritox Ltd.*, 101 USPQ2d at 1085.

In the case at hand, the specimen shows applicant is using the mark only on an item incidental to conducting its own business. The annual investment report is a common and necessary adjunct to the rendering of applicant's investment management and research services, that is, it is one of the means through which it provides investment services. For customers who have invested in the funds, it serves the purpose of a status report on the customers' investments; there is no evidence in the record that applicant charges for the report. Such customers do not solicit or purchase such reports for their intrinsic value; rather, they merely are being provided a report

on the status of their investments.  With regard to prospective investors, the report is tantamount to a sales document; the answer to the fundamental question, "what is being offered for sale," is the opportunity to invest in the funds and receive the investment management services of applicant.  The annual report provides advertising for the services, rather than being a product in itself.  The report is not sold separately from the services, and the report has no viable existence or independent value separate and apart from the services.  The publications are part and parcel of the services.

Applicant's argument based on the difference between applicant as a financial advisor rather than applicant as a family of funds is a distinction without a difference.  One does not exist without the other, and the investment services rendered by the funds and the funds' advisor are inextricably intertwined.  In this case, the report is part and parcel of the investment services, whether rendered by the fund or by the advisor.[3]

Applicant also argues that its report is not an "annual report" as that term is commonly recognized and understood in

---

[3] We would point out that the specimen raises a question as to whether the mark is being used by applicant at all.  The annual report would appear to be issued by the fund, and not by applicant as the advisor to the fund.  We hasten to add, however, that this issue was not raised by the examining attorney and, thus, is not before us.

the trade.  An "annual report" is defined in Black's Law

Dictionary (9th ed. 2009) as meaning:

> A report for shareholders and other
> interested parties prepared by corporations
> once a year; includes a balance sheet, an
> income statement, a statement of changes in
> financial position, a reconciliation of
> changes in owner's equity accounts, a
> summary of significant accounting
> principles, other explanatory notes, the
> auditor's report, and often comments from
> management about the year's business and
> prospects for the next year.

Most, if not all of this type of information appears in the

specimen of record.  Nevertheless, we accept applicant's

assertion that its particular "annual report" is not the type of

"annual report," as that term is understood in the trade, issued

by a company about itself and provided to shareholders.

However, in either case, the report is merely an item incidental

to conducting one's own business.

We find that applicant's "Annual Report" does not

constitute a "good in trade."  Rather, it serves as a conduit to

applicant's services; is inextricably tied to and associated

with the services so as to have no viable existence apart

therefrom; and is neither sold separately from nor has any

independent value apart from the services.  *See Lens.com, Inc.

v. 1-800 Contacts, Inc.*, 103 USPQ2d at 1676.  As such, the

specimen is unacceptable to support registration of the mark for

the identified goods.

**Decision:** The refusal to register is affirmed.