NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0138n.06

No. 14-3118

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 20, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NETJETS INC.; COLUMBIA INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| INTELLIJET GROUP, LLC, dba IntelliJet International, | ) | |
| | ) | OPINION |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: BOGGS, SUTTON, STRANCH, Circuit Judges

**JANE B. STRANCH, Circuit Judge.** This case is a dispute between two companies that provide services involving private airplanes about who should be able to use the mark INTELLIJET. NetJets Inc. developed internal management software in 1995, named it IntelliJet, and registered the trademark in connection with software. IntelliJet Group, LLC began operating under the name "IntelliJet International" in 2005. On IntelliJet Group's motion for summary judgment, the district court determined that NetJets (and the owner of its intellectual property, Columbia Insurance Company) had abandoned, through nonuse, any interest it may have held in the mark and that it therefore did not own any interest in the INTELLIJET mark that could be enforced through the Lanham Act, 15 U.S.C. § 1051 et seq., or through Ohio statutory or common law. It also canceled NetJets's registered trademark on the ground of abandonment. Because the district court failed to consider some of NetJets's uses of the INTELLIJET mark, we REVERSE and REMAND for further proceedings.

# I. BACKGROUND

NetJets, Inc. is a private-aviation company that specializes in 'fractional ownership' of private airplanes (essentially a time-share in a private jet); aircraft leasing services; private-jet services without ownership of the plane through charter services and 'jet cards'; private-plane management services; and sale of used airplanes. NetJets has transferred all of its intellectual property to Columbia Insurance Company. Columbia licenses NetJets to use the intellectual property and to sublicense the intellectual property, subject to Columbia's approval.

In July 1995, NetJets's predecessor company developed a software program to "run [the company's] business," and named the program IntelliJet. Later that year, the company applied to register the trademark INTELLIJET with the United States Patent and Trademark Office in connection with the good of "computer software for managing the business of aircraft leasing and sales." The application was approved and the Patent and Trademark Office issued Registration Certificate No. 2,025,410. NetJets continued to use and to improve the IntelliJet software, developing a new and expanded version called IntelliJet II. In 2002, the company filed a "declaration of use & incontestability" stating that the mark was being used in commerce, pursuant to 15 U.S.C. §§ 1058 and 1065, which was accepted by the Patent and Trademark Office.

IntelliJet Group LLC was founded in 2005 and is primarily a broker for private jet purchases. IntelliJet Group attempted to expand into management and leasing services, but the venture was not successful. They currently offer referrals for such services. The company's sales-tracking software is named "IntelliShit."

NetJets and Columbia filed this lawsuit in January 2012, bringing four claims against IntelliJet: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1051 et seq., and under

Ohio common law; (2) false designation of origin under the Lanham Act, 15 U.S.C. § 1125; (3) deceptive trade practices under Ohio Rev. Code § 4165.01 et seq.; and (4) common-law unfair competition and injury to business reputation. IntelliJet answered and filed a counterclaim for cancellation of NetJets's trademark registration on the grounds that NetJets abandoned it and that it was void ab initio. IntelliJet moved for summary judgment on the plaintiffs' Lanham Act claims and on its counterclaim to cancel the trademark registration for INTELLIJET.

The district court granted summary judgment to IntelliJet Group on the Lanham Act claims brought against it and on its counterclaim for cancellation of the INTELLIJET registration on the ground of abandonment. The court also granted summary judgment to IntelliJet Group on the common-law trademark claim. Finally, the court held all remaining claims in the case moot, pursuant to a consent motion from all parties, and entered judgment for IntelliJet Group.

## II.     STANDARD OF REVIEW

Grants of summary judgment are reviewed *de novo*. *See V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). In its review, this court applies the standard of Fed. R. Civ. P. 56(a): Summary judgment is appropriate only when the evidence, taken in the light most favorable to the nonmoving party, establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In determining whether a genuine dispute exists, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "While the mere existence of a scintilla of evidence in support of the non-moving party is insufficient to

defeat a motion for summary judgment, the court may deny the motion if the record contains evidence from which a jury could reasonably find for the non-moving party." *V & M Star Steel*, 678 F.3d at 465 (citing *Anderson*, 477 U.S. at 252).

## III. DISCUSSION

The Lanham Act contains two provisions by which a trademark owner can enforce its rights. Section 32 of the Act, 15 U.S.C. § 1114, provides remedies for those marks that have been registered. Section 43(a), 15 U.S.C. § 1125(a), protects against unfair competition by "passing off" a good or service as having been produced by another; it therefore protects registered marks, unregistered marks, and other aspects of a good or service. *Tumblebus v. Cranmer*, 399 F.3d 754, 760–61 (6th Cir. 2005). "To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). In Ohio, statutory and common law of unfair competition also protect against trademark infringement and "passing off." "Both Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common law of unfair competition and the Lanham Act." *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 626 n.2 (6th Cir. 2002).

The Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof" that is used or intended to be used in commerce "to identify and distinguish … goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. The statute further defines "use in commerce" as:

the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—

(1) on goods when—

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

*Id.*

The requirement that the use in commerce be a "bona fide use … in the ordinary course of trade" was added in the Trademark Law Revision Act of 1988, P.L. 100-667, § 134, 102 Stat. 3935 (1988). This amendment sought to eliminate the practice of "token use" of trademarks to provide a basis for registration. *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 357 (6th Cir. 1998); 3 J. McCarthy, McCarthy on Trademarks § 19:109 (4th ed. 2014) (citing legislative history of the 1988 Act). The Act now requires that the goods or services have been used in a way "which is typical in a particular industry"—a standard that "should be interpreted with flexibility so as to encompass various genuine, but less traditional, trademark uses, such as those made in test markets [and] infrequent sales of large or expensive items." S. Rep. No. 100-515, at 44 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5577, 5607; *see Lens.com, Inc. v. 1-800 Contacts, Inc.*, 686 F.3d 1376, 1379 (Fed. Cir. 2012). The House Report further explained:

> While use made merely to reserve a right in a mark will not meet this standard, the [House Judiciary] Committee recognizes that the 'ordinary course of trade' varies from industry to industry. Thus, for example, it might be the ordinary course of trade for an industry that sells expensive or seasonal products to make infrequent sales. Similarly, a pharmaceutical company that markets a drug to treat a rare disease will make correspondingly few sales in the ordinary course of its trade; the company's shipment to clinical investigators during the Federal approval process will also be in it[s] ordinary course of trade.

H.R. Rep. No. 100-1028, at 15, *reprinted in* 7 J. McCarthy, McCarthy on Trademarks Appendix A6; *see Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 940 (9th Cir. 2006). The statutory standard for bona fide use is "entirely consistent with the traditional rules governing common-law ownership of trademarks." *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 357 (6th Cir. 1998). A mark is considered abandoned if "its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. A mark owner, however, does not need to use the mark in the precise manner that it was initially used or registered to prevent abandonment. *See* 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 17:23 (4th ed. 2014); *see also* Restatement (Third) of Unfair Competition § 30 cmt. b (1995).

The district court concluded that the use of IntelliJet software was insufficient to support ownership of the mark based in part on a determination that NetJets had not sold its software independently from its private-plane services. In reaching this conclusion, the court overlooked an important factual dispute. NetJets did, in fact, put forward evidence that it has sold the IntelliJet software itself, rather than the private-plane services, to two external customers: Marquis Jet Partners and National Private Air Transport Services Company Limited. Marquis Jet Partners was an independent company that purchased a significant number of fractional shares from NetJets and subdivided those shares into smaller amounts of time, called "jet cards," which it then sold to its own customers. NetJets presented testimony that it licensed Marquis to

use the IntelliJet software to manage its jet-card business before purchasing Marquis in 2010. National Private Air Transport Services Company Limited operated NetJets Middle East under a "franchise type of arrangement," which included a "Technical Services Agreement" for use of IntelliJet software. The arrangement ended in October 2011. IntelliJet calls into question the nature of these agreements, particularly because no written agreement for the Marquis license could be found. The questions about the nature and existence of these licenses are nonetheless sufficient to call into question whether NetJets was marketing software, under the INTELLIJET mark, to other private-plane companies. In light of the dynamics of the private-plane industry and the nature of the software product, a reasonable jury could find such limited market involvement to nonetheless reflect a "bona fide use … in the ordinary course of trade," 15 U.S.C. § 1127, and that NetJets had therefore not abandoned the mark.

Because the grant of summary judgment predicated on abandonment was the basis for resolution of all claims of the parties, the district court had no reason to reach the parties' other arguments regarding their claims. We reverse the grant of summary judgment and return the case to the district court for it to address in the first instance those arguments—including whether there was a separate defect in the ownership of the mark other than abandonment and whether IntelliJet Group's use of the mark created a likelihood of confusion for private-plane companies that may seek to buy the software in the future. Whether NetJets owns an unregistered interest in the INTELLIJET mark in connection with its fractional-ownership or other services and whether it pled such an interest are also matters for the district court.

For the foregoing reasons, we REVERSE and REMAND this case to the district court for further proceedings consistent with this opinion.