# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2021

Lyle W. Cayce
Clerk

No. 20-30418

Dennis Perry,

*Plaintiff—Appellant*,

*versus*

H. J. Heinz Company Brands, L.L.C.; Kraft Heinz Foods Company,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-280

---

Before Owen, *Chief Judge*, and Graves and Ho, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:

Mr. Dennis Perry makes Metchup, which depending on the batch is a blend of either Walmart-brand mayonnaise and ketchup or Walmart-brand mustard and ketchup. Mr. Perry sells Metchup exclusively from the lobby of a nine-room motel adjacent to his used-car dealership in Lacombe, Louisiana. He has registered Metchup as an incontestable trademark. Though he had big plans for Metchup, sales have been slow. Since 2010, Mr. Perry has produced only 50 to 60 bottles of Metchup, which resulted in sales of around $170 and profits of around $50. He owns www.metchup.com but has never

No. 20-30418

sold Metchup online. For better or worse, the market is not covered in Metchup.

Along comes Heinz. It makes Mayochup, which is solely a blend of mayonnaise and ketchup. To promote Mayochup's United States launch, Heinz held an online naming contest where fans proposed names. A fan submitted Metchup, and Heinz posted a mock-up bottle bearing the name Metchup on its website alongside mock-up bottles for the other proposed names. Heinz never sold a product labeled Metchup.

When Mr. Perry discovered Mayochup and Heinz's use of Metchup in advertising, he sued Heinz for trademark infringement. The district court dismissed Mr. Perry's claims because it found that there was no likelihood of confusion between Mayochup and Metchup and no confusion caused by Heinz's fleeting use of Metchup in advertising. It also canceled Mr. Perry's trademark registration after concluding that he had failed to prove that he had made lawful, non-*de minimis* use of the Metchup mark in commerce.

We agree that there is little chance that a consumer would confuse Mr. Perry's Metchup with Heinz's Mayochup or be confused by Heinz's use of Metchup in advertising, so we affirm the district court's dismissal of Mr. Perry's claims against Heinz. But because Mr. Perry sold some Metchup and testified that he hoped to sell more, a finder of fact should determine whether his incontestable trademark should be deemed abandoned and canceled. Consequently, we vacate the district court's cancelation of Mr. Perry's trademark and remand for further proceedings on Heinz's counterclaim.

I.

Heinz began selling Mayochup in the Middle East in 2016. It decided to bring this convenient, yet perhaps gratuitous, mixture to the United States in 2018. To promote its blends of ketchup and ranch ("Kranch"), mayonnaise and mustard ("Mayomust"), mayonnaise and barbecue sauce

("Mayocue"), and mayonnaise and ketchup, it staged a publicity stunt. To get customers used to the uncanny sauce blends, Heinz turned to the Internet and asked its fans to propose names for its concoctions.

The promotion was a hit. Heinz received over ninety proposed names for its mayonnaise and ketchup blend, including Saucy McSauceface, an apparent nod to Boaty McBoatface, the name the Internet proposed for a British research ship.[1] But the submissions were not all so fanciful and included more suggestive names like Metchup. At the end of the campaign, Heinz posted mock-up bottles bearing the proposed names on its website. Heinz never sold bottles with Saucy McSauceface or Metchup on them. It was all for advertising purposes only.

Before posting the mock-up bottles, Heinz had its in-house lawyers run a trademark search, which turned up a trademark registration for Metchup. Turns out, Heinz was not the first to grapple with both the problem of having to contemplate ratios and the inconvenience of having to use two bottles when preparing a burger.

Mr. Perry, who operates the nine-room Star Hotel and an adjoining used-car lot in Lacombe, Louisiana, had years ago decided to solve these issues and share his love of mayonnaise blended with ketchup (and occasionally mustard) with others. Mr. Perry says he first had the idea to make a blended sauce called Metchup sometime in 2000. But it took a while for him to get around to producing it.

In addition to used car sales and motel management, he "dabbled in" the buying and selling of domain names. At one time, he owned as many as 1,400 domain names that he hoped to sell for a profit. In 2007, Mr. Perry purchased the domain names for www.metchup.com and

---

[1] Katie Rogers, *Boaty McBoatface: What You Get When You Let the Internet Decide*, N.Y. TIMES, March 21, 2016, https://www.nytimes.com/2016/03/22/world/europe/boaty-mcboatface-what-you-get-when-you-let-the-internet-decide.html.

www.metchup.uk.co and applied to register Metchup as a trademark with the United States Patent and Trademark Office.

Mr. Perry began making Metchup for public consumption sometime in 2010 or 2011. He made it by blending Walmart-brand mayonnaise and ketchup together in his home kitchen, funneling the small batches into plastic bottles, and labeling them with a printed label. He sold the first bottle of Metchup to his mother and put the rest up for sale in the lobby of the Star Motel.

Sales in hand, Mr. Perry submitted a photograph to the PTO, which then issued him a trademark registration for the name Metchup in 2011. He renewed the trademark registration in 2017 (submitting the same photo he submitted in his first application), and the PTO declared the mark incontestable in 2018.

Mr. Perry had high hopes for Metchup, writing in one notebook that he wanted to sell two million bottles, but Metchup was neither an online sensation nor a brick-and-mortar success. Over the years, Mr. Perry has sold only small quantities of Metchup exclusively at the Star Motel. Though Mr. Perry sold Metchup to motel guests traveling through "from all over the place," he has only thirty-four documented sales. And while he insists he sold a few more bottles than that, any dispute over sales figures is immaterial because he has made at most nine or ten six-bottle batches of Metchup. He thought about contacting a bottle producer to expand his operation but never did.

While Mr. Perry owned metchup.com, he never sold Metchup online. The domain name linked to a Facebook page with pictures of Metchup bottles on it, but there was no way to purchase Metchup through the page and no clear indication that Metchup was actually for sale. There were so few signs that a product called Metchup was for sale that one could see how Heinz's in-house trademark research team found Mr. Perry's registration but

No. 20-30418

concluded that the trademark was not in use. The markets were not exactly covered in Metchup.

After the naming contest and the mock-up Metchup bottle, Heinz released Mayochup for sale in the United States. Mr. Perry's son-in-law discovered Mayochup at the grocery and let Mr. Perry know. Mr. Perry then went online and discovered that not only had Heinz released its own mayonnaise and ketchup blend but that it had also used the name Metchup in its promotional efforts.

Mr. Perry hired a lawyer and sued Heinz for trademark infringement, trademark counterfeiting, false designation of origin, and for violations of various Louisiana trademark laws. Heinz filed a counterclaim to have Mr. Perry's Metchup trademark registration canceled for abandonment or non-use.

After speaking with counsel, Mr. Perry sent samples of Metchup to national grocery chains in Florida and a store in New Orleans in hopes of expanding Metchup's market footprint. But Mr. Perry never heard anything back. His lawsuit against Heinz fared no better than his expansion efforts. After discovery, Heinz filed a motion for summary judgment. The district court granted the motion in full and dismissed all of Mr. Perry's claims and canceled his trademark registration for Metchup because it deemed the trademark abandoned.

## II.

The panel reviews the grant of summary judgment de novo. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009). All of Mr. Perry's claims require him to show ownership of a valid trademark and that Heinz used the mark or a similar mark in a way that created a likelihood of confusion. *Id.* at 226–27; 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), 1117; 1125(a); La. Rev. Stat. § 51:222, 222.1.

Under the Lanham Act, Mr. Perry's certificate of registration for his Metchup trademark is prima facie evidence of its validity.

15 U.S.C. §§ 1057(b), 1115(a). The PTO found that Mr. Perry's Metchup mark had achieved incontestable status because it had been registered and used in commerce for over five years. 15 U.S.C. § 1065; *see also American Rice, Inc. v. Prod. Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. 2008). Once a mark becomes incontestable, its federal registration constitutes *conclusive* evidence of its validity, subject only to the defenses enumerated in section 1115 of the Lanham Act, which includes the defense of abandonment. 15 U.S.C. § 1115(a); § 1115(b)(2), § 1065(4) (emphasis added). *See also American Rice*, 518 F.3d at 330.

Mr. Perry has conclusive evidence that he owns a valid trademark and has shown that Heinz has used both the Metchup trademark and the Mayochup name in commerce. Heinz after all used the Metchup mark in conjunction with its advertising campaign and sells Mayochup, an ostensibly similar product, in groceries nationwide. So we set the issues of ownership, use, and abandonment aside for a moment to first address whether Heinz used the Metchup trademark and Mayochup name in a way that likely confused consumers as to the source, sponsorship, or affiliation of the blended sauces at issue. *Xtreme Lashes*, 576 F.3d at 226. "Likelihood of confusion" requires more than a mere possibility; Mr. Perry must show a probability of confusion. *Id.*

When deciding whether the use was confusing, courts rely on a non-exhaustive set of factors called digits of confusion, which include: (1) the type of trademark, (2) mark similarity, (3) product similarity, (4) outlet and purchaser identity, (5) advertising media identity, (6) defendant's intent, (7) care exercised by potential purchasers, and (8) actual confusion. *Id.* at 227.

A few factors weigh in Mr. Perry's favor. Setting aside production methods, the products are similar. Selling for around $5.00 per bottle, both are inexpensive. The low price perhaps suggests that potential purchasers are less likely to exercise care when buying. But then again, people are discerning with regard to condiments and resolute in their preferences (e.g., Heinz

ketchup versus Hunt's ketchup). Lastly, Heinz used the exact word Metchup on a mock-up bottle in online advertising.

But trademarked words cannot be isolated from the labels on which they appear, and these labels and bottles look nothing alike.

  

*Sun-Maid Raisin Growers of Cal v. Sunaid Food Prods., Inc.*, 356 F.2d 467, 469 (5th Cir. 1966); *see also Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 287–88 (5th Cir. 2020) (noting differences in packaging). The products' distinguishable packaging mitigates against Heinz's use of the word Metchup because the packaging differences make confusion less likely.

The type of mark weighs in Heinz's favor. Trademarks are evaluated on a spectrum. Descriptive and suggestive marks are considered weaker than marks that are arbitrary and fanciful, which are marks that bear almost no relationship to the products to which they are applied (e.g., Saucy McSauceface). *Future Proof Brands*, 982 F.3d at 289–292 (comparing types of trademarks). Metchup is a suggestive trademark because while it requires a little imagination to draw a conclusion about the goods, the mash-up of a name relates to the names of the two sauces that form the blend. *See id.* at 291.

Both Mr. Perry and Heinz are selling to potential condiment purchasers. But they have to date targeted different segments of this market. Mr. Perry has limited his sales efforts to the travelers staying at his nine-room motel in Lacombe, Louisiana, and to visitors to his used car lot. The small motel and the adjoining used car lot are not the first place condiment purchasers go for ketchup and mayonnaise in any form. Moreover, Mr. Perry has neither sold Metchup online nor shipped orders of Metchup. He has made only minimal efforts to expand his distribution. And when he did attempt to expand, his efforts involved, not approaching local restaurants, stores, or farmer's markets, but sending unsolicited samples to national grocery chains in Florida and a hot sauce store in New Orleans.

Mr. Perry markets his products to the guests at his nine-room motel, Heinz to the shoppers at most every grocery and to online customers through an extensive web store. Sensibly speaking, Mr. Perry has no presence in Heinz's market and Heinz no presence in his. This is not to say that Mr. Perry would not have trademark rights should he choose to expand. It is, however, saying that as the products were situated at the time Heinz used the name Metchup on a mock-up label, and as Heinz's Mayochup currently stands in relationship to Mr. Perry's Metchup, there was, and is, no market overlap.

Mr. Perry does not buy print ads, issue coupons, enter his sauce into contests, or advertise Metchup on signage. Mr. Perry, however, contends that both he and Heinz marketed their products on the Internet. True, but Mr. Perry's online presence was limited to a Facebook page with pictures of Metchup bottles on it. Unlike Heinz, he has never used the Internet for sales or large-scale advertising. While Heinz knew Mr. Perry had registered the Metchup mark, the lack of advertising and established market goodwill makes it easy to see how it concluded that the mark was no longer in use. So, the digits of outlet and purchaser identity, advertising media identity, and defendant's intent all weigh in favor of Heinz.

No. 20-30418

Finally, there is the question of actual confusion. While it need not be proven, actual confusion is "the best evidence of a likelihood of confusion." *Xtreme Lashes*, 576 F.3d at 229. The district court relied almost exclusively on the lack of actual confusion when it dismissed Mr. Perry's claims. Indeed, nothing in the record shows that any consumer actually got confused by Heinz's use of Metchup on a mock-up bottle or confused Heinz's Mayochup with Mr. Perry's Metchup. After all, Heinz never sold a product named Metchup and there is no evidence that Heinz's Mayochup and Mr. Perry's Metchup have ever competed for sales.

Mr. Perry introduced expert testimony from Dr. Lucy L. Henke, a marketing professor with a doctorate in communication studies. She said that the typical consumer would confuse Mayochup and Metchup due to visual and auditory similarities between the two names. Dr. Henke pointed out that the words only differ by three letters and noted that Twitter users asked Heinz about the pronunciation of Mayochup, "Is it pronounced May-o-chup or Metchup?"

But asking questions about pronunciation does not show that the Twitter users were actually confusing Heinz's Mayochup with Mr. Perry's Metchup. Confusion about how to pronounce the product's name does not show actual confusion as to its source, sponsorship, or affiliation.

More importantly, Dr. Henke neither presented consumer survey data nor provided an analysis of such data. Her testimony amounts to her personal opinion on the topic of actual confusion and does not address evidence where potential consumers were asked to offer their opinions or tested to see if they actually got, or were, confused by either Heinz's use of the name Metchup in advertising or by it selling Mayochup. Thus, Dr. Henke's testimony provides no evidence of actual confusion.

"Incontestable status does not make a weak mark strong." *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 171 (5th Cir. 1986). Mr. Perry's incontestable mark means that he has rights to use the mark nationwide, but

No. 20-30418

it does not automatically mean that another's use of the mark constitutes infringement. This is not a strict liability situation, and in the end, Mr. Perry's Metchup mark is simply too weak for there to be a likelihood of confusion on these facts.

It would be a coincidence to ever encounter both Mayochup and Metchup in the market, much less get confused about the affiliation, sponsorship, or origin of the two products. Accordingly, no reasonable jury could conclude that Heinz's use of Metchup in advertising or the sale of its own product, Mayochup, created a likelihood of confusion. We therefore affirm the district court's decision to dismiss Mr. Perry's claims against Heinz.

### III.

While the lack of a probability of confusion spoils all of Mr. Perry's claims, it does not have the same ruinous effect on Mr. Perry's ownership of the Metchup trademark. The district court granted summary judgement on Heinz's counterclaim for trademark cancelation because it found that Mr. Perry had, as a matter of law, abandoned his incontestable trademark for Metchup.

Abandonment may be a defense even against a party possessing an incontestable mark. 15 U.S.C. § 1115(b)(2). But a party claiming that a trademark has been intentionally abandoned bears a heavy burden. *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 387 (5th Cir. 1977) (citing *American Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 625 (5th Cir. 1963)). "Abandonment is in the nature of a forfeiture" and requires satisfying the "burden of strict proof applicable in forfeiture cases." *American Foods*, 312 F.2d at 624–25. Courts have equated the requirement for strict proof to the burden of providing clear and convincing evidence. 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed. 2021).

10

The Lanham Act provides that "[a] mark shall be deemed to be 'abandoned' . . . [w]hen its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from the circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127; *see also Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1078–79 (5th Cir. 1997). "Use" for purposes of the Lanham Act equates to "use in commerce." *See* 15 U.S.C. § 1127. The act further defines "use" as "the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." *Id.* Section 1127 appears to impose two requirements—use in commerce and bona fide use or use not merely to reserve a right.

The district court first found that Mr. Perry had abandoned his trademark because "[he] [ ] failed to produce any evidence to show any sales of METCHUP-branded products outside of Louisiana or to non-Louisiana residents." But this conclusion that Mr. Perry never used his mark in commerce because *he* cannot prove sales outside of Louisiana conflicts with recent Commerce Clause jurisprudence and misplaces the burden of proof.

"Because one need not direct goods across state lines for Congress to regulate the activity under the Commerce Clause, there is likewise no such per se condition for satisfying the Lanham Act's 'use in commerce' requirement." *Christian Faith Fellowship Church v. adidas AG*, 841 F.3d 986, 995 (Fed. Cir. 2016). In *Christian Faith Fellowship*, the Trademark Trial and Appeal Board concluded that two sales totaling $38 to two out-of-state residents were *de minimis* and therefore not sales in commerce. *Id.* at 987–88. The Federal Circuit overturned the decision. *Id.* A brief study of modern Commerce Clause cases reveals that seemingly *de minimis* intrastate activities can influence interstate commerce, be regulated by Congress, and thus count as uses in commerce for purposes of the Lanham Act. *See id.* at 991–92 (citing *Gonzales v. Raich*, 545 U.S. 1, 6–8 (2005)).

But what may be most concerning is that the district court misplaced the burden of proof. Mr. Perry testified that he sold Metchup to motel guests

who come from "all over the place." Heinz has the burden to prove otherwise by presenting strict proof, and it has neither put forth evidence that discredits Mr. Perry's testimony nor has it shown why the reasoning from *Christian Faith Fellowship* would fail to apply here.

The district court's flawed use-in-commerce reasoning and the misplacement of the burden of proof are not the only obstacles preventing us from affirming its grant of summary judgment on Heinz's counterclaim. The district court also reasoned that Mr. Perry had failed to make "lawful, non-*de minimis* use" of the Metchup mark. Heinz insists that Mr. Perry's use was unlawful because he failed to comply with state and federal food labelling regulations when he omitted required information from the Metchup labels. But this court has not adopted the unlawful use doctrine—the doctrine that failing to abide by all laws and regulations can turn what would otherwise constitute "use" into "non-use." *See FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1086–88 (11th Cir. 2016) (discussing the history and application of the unlawful use doctrine); *see also* 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed. 2021). We see no reason to adopt the doctrine here.

Abandonment generally requires a complete discontinuance of the trademark's use and even minor or sporadic good faith uses of a mark will defeat the defense of abandonment. *Electro Source, LLC v. Brandess–Kalt–Aetna Group, Inc.*, 458 F.3d 931, 938 (9th Cir. 2006) ("Even a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith.") (internal citation omitted). *See also NetJets Inc. v. IntelliJet Grp., LLC*, 602 F. App'x 242, 245–46 (6th Cir. 2015) (concluding that reasonable jury could find two sales of software license bona fide use); *Cumulus Media, Inc. v. Clear Channel Communs., Inc.*, 304 F.3d 1167, 1173–74 (11th Cir. 2002) ("[E]vidence of [the owner's] use of [the mark] . . . was limited, consisting largely of a logo on a billboard, some business cards, and a few promotional materials, but it was sufficient to enable the trial court to

reject [the defendant's] abandonment defense."). *But see Emergency One, Inc. v. American FireEagle, Ltd.*, 228 F.3d 531 (4th Cir. 2000) ("One recycled American Eagle truck with an AMERICAN EAGLE nameplate over the course of three years is no more than token use which, standing alone, is legally insufficient to disprove abandonment.").

Heinz cannot show that Mr. Perry abandoned the mark due to complete nonuse. True, Mr. Perry neither sold (only 34 documented sales) nor made (only 60 bottles produced) much Metchup. And we did find in *Exxon Corp. v. Humble Exploration Co., Inc.,* 965 F.2d 96 (5th Cir. 1983), that seemingly similar sporadic and *de minimis* use could serve as grounds for registration cancellation.

But *Humble* addressed what could be called *de minimis* use in the context of a trademark maintenance program where Exxon made only token or sporadic use of its retired Humble Oil name to reserve rights to the trademark. 965 F.2d at 99–101. For example, Exxon packaged products adorned with both Exxon and Humble labels and shipped the goods to customers. *Id. Humble* built upon an earlier Second Circuit decision where the court found that token defensive use was insufficient to obtain enforceable rights in a trademark. *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1273–74 (2d Cir. 1974). In *Le Galion*, Jean Patou had registered a trademark in the United States and sold a small amount of perfume under the trademarked name to keep Le Galion from selling a competing product. *Id.* at 1274.

*Humble* and *Le Galion* concern behavior that the Lanham Act specifically prohibits. In fact, the Seventh Circuit has cabined cases like *Le Galion* and *Humble* to situations involving a trademark maintenance program or defensive trademark use, implying that *de minimis* sales and use alone are insufficient to show abandonment. *See S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 668–70 (7th Cir. 2016). Again, the Lanham Act's framework imposes two requirements—use in commerce and bona fide use or use not merely to reserve a right.

These requirements have nothing to do with a threshold use or sales requirement, nor do they imply that trademark rights, however weak, will vanish if sales are slow. In fact, sales are "not the sine qua non of trademark use." *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1267 (5th Cir. 1975). So, considering the Lanham Act's requirements and the more prevalent view that even minor good-faith use can forestall abandonment, *de minimis* sales and sporadic use alone are not enough to warrant a conclusion that Mr. Perry has not made "use" of the mark in a way that qualifies as "use" under the Lanham Act.

That said, Heinz has created an issue of fact as to whether Mr. Perry's use of the Metchup mark was bona fide use or whether he was simply making sporadic use of the mark to maintain his trademark rights. Mr. Perry has a history of acquiring domain names with no intention of using them and with hopes of selling them for a profit. This "domain squatting" is akin to a trademark maintenance program. And evidence suggests that Mr. Perry might have been doing something similar with the Metchup trademark.

Mr. Perry made next to no effort to grow the sales of Metchup. He never registered his trademark in Louisiana, never attempted to sell Metchup in local stores, restaurants, or farmer's markets; never attempted to increase production or improve packaging; and never attempted to sell the product online or advertise where the product could be purchased online. His only attempts to get Metchup into stores came when he sent unsolicited samples to national groceries and to a store in New Orleans after he found out Heinz was selling a similar product and had used the name Metchup in its marketing. At the time of his deposition, Mr. Perry had no Metchup on hand. Thus a reasonable jury could infer that Mr. Perry's registration and use of the trademark was something other than a sincere, good-faith business effort and something more like a trap that Heinz unwittingly fell into.

But if that inference is to be made, it should be made by a finder of fact because "summary judgment is rarely proper when an issue of intent is involved." *Guillory v. Domtar Indus. Inc. v. John Deere Co.,* 95 F.3d 1320, 1326

(5th Cir. 1996). Heinz has a heavy burden, and the absence of definitive proof of a trademark maintenance program like the one in *Humble* requires an examination of Mr. Perry's intent and credibility to determine whether his use of the Metchup mark was bona fide use. After all, Mr. Perry had hoped to sell millions of bottles and testified that he contemplated expanding production and improving packaging. Consequently, his efforts could also be seen as a foundering business venture rather than a trademark trap. We therefore vacate the district court's grant of summary judgment on Heinz's cancelation counterclaim and remand the case to the district court for further proceedings to address whether Mr. Perry made bona fide use of the Metchup mark.

## IV.

We AFFIRM in part and VACATE in part and REMAND for further proceedings on Heinz's counterclaim and the issue of abandonment.