THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: April 29, 2026

UNITED STATES PATENT AND TRADEMARK OFFICE

Trademark Trial and Appeal Board

————

*In re Everwise Credit Union*

————

Reexamination No. 2023-100533R for Registration No. 7068783

————

Joel E. Tragesser, Xheneta Ademi, and Corinne E. Fombelle of Quarles & Brady LLP,
    for Everwise Credit Union.

Brittany Lee-Richardson, Staff Attorney, Law Office 800,
    Montia Pressey, Director for Trademark Register Protection.

————

Before Pologeorgis, Allard, and Lavache,
    Administrative Trademark Judges.

Opinion by Pologeorgis, Administrative Trademark Judge:

Everwise Credit Union ("Registrant") appeals the Director of the United States

Patent and Trademark Office's ("USPTO" or "Office") final decision, on petition for

reexamination, finding that Registration No. 7068783 should be cancelled under

Section 16B of the Trademark Act, 15 U.S.C. § 1066b(b), because Registrant failed to

demonstrate use in commerce of the standard character mark EVERWISE CREDIT

UNION (CREDIT UNION disclaimed) for the International Class 36 services listed

below as of the relevant date, which in this case was April 14, 2023, the deadline to file a statement of use:[1]

> Banking services; Credit union services; Insurance brokerage services; Insurance services, namely, underwriting, issuance and administration of life, disability; Investment brokerage; Mortgage brokerage; Mortgage financing services; Mortgage refinancing; Commercial lending services; Consumer lending services; Financial asset management; Financial and investment services, namely, asset and investment acquisition, consultation, advisory and development; Financial services, namely, wealth management services; Financial services, namely, money lending; Investment banking services; Investment services, namely, asset acquisition, consultation, development and management services; Life insurance brokerage; Life insurance underwriting; Mortgage banking services, namely, origination, acquisition, servicing, securitization and brokerage of mortgage loans; Mortgage lending; On-line banking services; On-line banking services featuring electronic alerts that alert credit and debit card users when a single transaction exceeds a certain amount; Online banking services accessible by means of downloadable mobile applications; Providing a website featuring information in the field of banking; Real estate lending services; Savings bank services.

The sole issue before the Board is whether Registrant has submitted information and evidence sufficient to establish use in commerce of the EVERWISE CREDIT UNION mark with the identified services as of the relevant date. To provide the necessary context for our analysis, we first review the background of this case.

## I.   Nature of Proceeding

Expungement and reexamination proceedings are ex parte proceedings created by the Trademark Modernization Act of 2020. *Common Sense Press Inc. v. Van Sciver*,

---

[1] Registration No. 7068783 issued on May 30, 2023 from an application claiming April 10, 2023 as both the date of first use and first use in commerce. On July 19, 2023, Registrant filed with the Office's Assignment Branch a change of name from Teachers Credit Union to Everwise Credit Union. The change of name was executed on **June 26, 2023**. *See* Assignment Branch Reel/Frame 8137/0118 (emphasis added).

No. 92075375, 2023 WL 3596333, at *2 (TTAB 2023) (citing Trademark Act Sections 16A (expungement), 16B (reexamination), 15 U.S.C. §§ 1066a, 1066b; Trademark Rules 2.91-2.94, 37 C.F.R. §§ 2.91-2.94). Both types of proceedings are instituted by the USPTO Director in connection with a registration, either on the Director's own initiative or pursuant to a petition filed by a third party. In an expungement proceeding, it must be demonstrated that a mark has never been used in commerce on or in connection with some or all of the goods and/or services recited in the registration. *Common Sense Press*, 2023 WL 3596333, at *2 (citing Trademark Act Sections 16A(c)(1), 15 U.S.C §§ 1066a(c)(1)). In a reexamination proceeding, it must be shown that a mark was not in use in commerce on or in connection with some or all of the goods or services recited in the registration on or before the relevant date, as explained more fully below. *Id*. (citing Trademark Act Section 16B(d)(1), 1066b(d)(1); 37 C.F.R. § 2.92); *see also* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1716 (Nov. 2025).

In a reexamination proceeding, such as the case here, the USPTO may cancel a registration, in whole or in part, if the evidence of record shows that the registered mark was not in use in commerce as of the filing date of a use-based application or, in the case of an intent-to-use application, as of the date of an amendment to allege use, or as of the deadline for filing a statement of use, including all approved extensions, as applicable. Section 16B(g) of the Trademark Act, 15 U.S.C § 1066b(g); Trademark Rule 2.91(a)(2), 37 C.F.R. § 2.91(a)(2). Accordingly, a reexamination proceeding is applicable only to registrations based on use in commerce under Section

1(a) of the Trademark Act, 15 U.S.C. § 1051(a). Trademark Rule 2.91(a)(2), 37 C.F.R. § 2.91(a)(2).[2]

Under Trademark Rule § 2.92(f)(2), 37 C.F.R. 2.92(f)(2), if the Director finds that a reexamination proceeding should be instituted based on a prima facie showing of nonuse, the Director's decision and notice of institution of the proceeding will be set forth in an office action. *See also* 15 U.S.C. § 1066b(d)(1). The Director's decision to institute a reexamination proceeding upon determining that a prima facie showing of nonuse has been established is not reviewable. Section 16B(d)(3) of the Trademark Act, 15 U.S.C. § 1066b(d)(3) ("Any determination by the Director whether or not to institute a reexamination proceeding under this section **shall be final and non-reviewable**, and shall not prejudice any party's right to raise any issue and rely on any evidence in any other proceeding, except as provided in subsection (j).") (emphasis added).

In accordance with Trademark Rule § 2.93(a), the office action "will require the registrant to provide evidence of use, information, exhibits, affidavits, or declarations as may be reasonably necessary to rebut the prima facie case of nonuse by establishing that the required use in commerce has been made on or in connection with the goods and/or services at issue as of the relevant date[.]" 37 C.F.R. 2.93(a); *see also CHANGES TO IMPLEMENT PROVISIONS OF THE TRADEMARK MODERNIZATION ACT OF 2020*, 86 Fed. Reg. 26,866 (May 18, 2021). "A registrant's documentary evidence of

---

[2] In contrast, a petition for expungement may be filed in connection with a mark registered under Trademark Act Sections 1, 44, or 66(a), 15 U.S.C §§ 1051, 1126, 1141(f). 37 C.F.R. § 2.91(a)(1).

use shall be consistent with when a mark shall be deemed to be in use in commerce under the definition of 'use in commerce' in section 1127 … ." 15 U.S.C. § 1066b(f).

"Use in commerce" is the bona fide use of a mark in the ordinary course of trade. Section 45 of the Trademark Act, 15 U.S.C. § 1127. Only bona fide use of a mark in the ordinary course of trade will support registration of a mark. Use made merely to reserve a right in a mark does not meet the statutory standard of bona fide use in the ordinary course of trade. *See* TMEP § 901.02 (citing legislative history for the Trademark Law Revision Act of 1988 (TLRA), Public Law 100-667, 102 Stat. 3935); *see also Couture v. Playdom*, 778 F.3d 1379, 1381 (Fed. Cir. 2015) ("The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark."); *Lens.com, Inc. v. 1-800 Contacts, Inc.*, 686 F.3d 1376, 1380 (Fed. Cir. 2012*)* (same); *Aycock Eng'g., Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009) (explaining the requirement that a mark be used in the "ordinary course of trade").

Evidence of use must be accompanied by a statement from someone with firsthand knowledge verified under Trademark Rule 2.20, 37 C.F.R. § 2.20, that sets forth in numbered paragraphs facts about use of the mark in commerce and the supporting documentary evidence, including how the evidence demonstrates use of the mark in commerce as of the relevant date for the goods or services at issue. Trademark Rule 2.93(b)(7), 37 C.F.R. § 2.93(b)(7).

Acceptable documentary evidence of use of the mark in commerce includes specimens of use filed pursuant to Trademark Rule 2.56, 37 C.F.R. § 2.56. However,

simply resubmitting a previously submitted specimen without additional supporting evidence generally will not rebut a prima facie case of nonuse. *See* TMEP § 1716.04(c) ("Generally, because the registration file has already been considered in instituting the proceeding based on a prima facie case of nonuse, merely resubmitting the same specimen of use previously submitted in support of registration or maintenance thereof, or a verified statement alone, without additional supporting evidence, will likely be insufficient to rebut a prima facie case of nonuse."). If a specimen showing use of the mark as of the relevant date is no longer available for particular goods or services, the registrant may provide other evidence or explanations supported by a verified statement under Trademark Rule 2.20, 37 C.F.R. § 2.20, that demonstrate the mark was used in commerce as of the relevant date. *See id.*

As an alternative to introducing evidence to rebut the prima facie case of nonuse, the registrant may delete the goods or services at issue in the proceeding. Trademark Rule 2.93(b)(6)(ii), 37 C.F.R. § 2.93(b)(6)(ii). Any deletions in response to an Office Action will be construed as a request to amend the registration under Trademark Act Section 7, and shall render the proceeding moot as to those goods or services. *See* 15 U.S.C. § 1057(e); 37 C.F.R. §§ 2.93(d)(3), 2.173(e). No further determination will be made regarding the registrant's use of the mark in commerce as to those goods or services. Trademark Rule 2.93(d)(3), 37 C.F.R. § 2.93(d)(3). If the registrant deletes all of the goods or services in the registration, that is the same as surrendering the registration for cancellation, and the registration will be cancelled in its entirety, also

mooting the proceeding. *See* 15 U.S.C. § 1057(e); Trademark Rule 2.172, 37 C.F.R. § 2.172.

## II. Background[3]

On June 20, 2019, Registrant, as then-applicant, filed the underlying application alleging a bona fide intention to use the standard character mark EVERWISE CREDIT UNION for the financial services identified above.[4] The application was approved for publication on September 12, 2019, and was published for opposition on October 22, 2019. A notice of allowance issued on April 14, 2020. Thereafter, Registrant filed five requests for an extension of time to file its Statement of Use. The Office granted all five requests. The last granted extension allowed Registrant until April 14, 2023 to file its Statement of Use ("SOU Deadline").[5] On the SOU Deadline, Registrant filed its Statement of Use with an accompanying specimen of use. On April 22, 2023, the Office accepted Registrant's Statement of Use. The application matured into a registration on May 30, 2023.

On July 20, 2023, a third party filed a petition for reexamination arguing that Registrant's EVERWISE CREDIT UNION mark was not in use in commerce for any

---

[3] Citations to filings with the Board refer to TTABVUE, the Board's online docketing system. The number preceding "TTABVUE" corresponds to the docket entry number, and any numbers following "TTABVUE" refer to the page numbers of the docket entry where the cited materials appear. Citations to the record of the reexamination proceeding refer to the .pdf versions in the TSDR system for the registration.

[4] *See* Application Serial No. 88483393.

[5] Here, Registrant, as then-applicant, filed its Statement of Use on the "relevant date," as defined by Section 16B(b)(2)(B) of the Trademark Act, 15 U.S.C. §1066b(2)(B), because it was the last day of the non-extendable period for filing its Statement of Use.

of the listed International Class 36 services as of the SOU Deadline.[6] Specifically, the petitioner characterized the specimen of use submitted on the SOU Deadline as consisting of a screenshot of Registrant's website, www.tcunet.com, that announces Registrant's intent to rebrand from Teachers Credit Union to Everwise Credit Union because Registrant's services were "not just for teachers anymore."[7] The petitioner argued that an announcement of an intent to adopt a mark in the future is not acceptable to show present use of that mark in connection with the services identified in International Class 36.[8]

The petitioner also maintained that the searches it conducted with the Wayback Machine, an Internet archive, likewise evidenced that Registrant was not using the EVERWISE CREDIT UNION mark in connection with any of the listed services as of the SOU Deadline.[9] The petitioner claimed that it conducted a Wayback Machine search of Registrant's website on dates prior to and including June 16, 2023, the date of its investigation, and that none of the searches revealed use of the EVERWISE CREDIT UNION mark as of the SOU Deadline.[10] Additionally, the petitioner contended that it reviewed both Google Play Store and Apple Store evidence and found that Registrant, as of the SOU Deadline, offered a mobile application for its credit union under the name "TCU Mobile Banking" and not EVERWISE CREDIT

---

[6] July 20, 2023 Request for Reexamination, TSDR pp. 53-54.

[7] *Id.*

[8] *Id.*

[9] *Id.*, TSDR pp. 54-55.

[10] *Id.*, TSDR pp. 55-57.

UNION.[11] The petitioner further argued that it performed a search of the Board's TTABVUE database for Registrant's subject registration and found no record of administrative proceedings containing evidence of Registrant's use of its EVERWISE CREDIT UNION mark in connection with the listed Class 36 services.[12]

Finally, the petitioner maintained that, on June 16, 2023, it performed a search on the USPTO database and found no evidence of use of the subject mark in connection with the listed Class 36 services in the United States. [13]

Based on its investigation, the petitioner concluded that Registrant's EVERWISE CREDIT UNION mark was not in use in commerce in connection with the listed services as of the SOU Deadline.[14]

On August 29, 2023, the Examiner[15] issued a Combined Notice of Institution and Non-Final Office Action finding that the petition for reexamination and accompanying evidence set forth a prima facie showing that Registrant's EVERWISE CREDIT UNION mark was not in use in commerce as of the SOU Deadline with any

---

[11] *Id.*, TSDR p. 57.

[12] *Id.*

[13] *Id.*, TSDR pp. 53-54. That the petitioner's search of USPTO records did not yield evidence of use is not probative, as the USPTO database is not a repository of evidence of use of marks; rather, it is a database of pending applications and issued registrations (as well as dead applications and cancelled registrations).

[14] *Id.*, TSDR p. 58.

[15] While the terms "Trademark Examining Attorney" or "Examining Attorney" are typically used in decisions involving ex parte appeals, inasmuch as the Trademark Modernization Act contemplates "the examiner's decision," *see* Trademark Act Section 16B(g), 15 U.S.C. § 1066b(g), we will use the term "Examiner."

of the Class 36 services listed in the registration.[16] The Non-Final Office action allowed Registrant time to submit evidence to rebut the prima facie showing or to delete involved services.[17]

On December 22, 2023, Registrant timely filed its response to the Non-Final Office Action providing purported evidence of use of its EVERWISE CREDIT UNION mark as of the SOU Deadline, including the sworn declaration of Angie Dvorak, Registrant's Chief Marketing & Growth Officer, who attested to Registrant's use of the EVERWISE CREDIT UNION mark during the relevant time period.[18] In its response, Registrant argued that it has used EVERWISE CREDIT UNION as a mark in U.S. commerce in connection with the registered services since at least as early as April 10, 2023 (the date of first use listed in its registration), except for providing "long-term care insurance," which it voluntarily then deleted from the subject registration.[19] Additionally, Registrant argued that the specimen submitted has nothing to do with rebranding and there was absolutely no insinuation or representation of any kind in the specimen about an "intent" to rebrand.[20] Rather, Registrant contended that its registered EVERWISE CREDIT UNION mark was

---

[16] August 29, 2023 Non-Final Office Action, TSDR pp. 1-6. The Director's authority to make determinations and issue notices and decisions related to this matter was delegated to the assigned Examiner pursuant to 35 U.S.C. § 3(a)-(b).

[17] *Id.*, TDSR pp. 3-4.

[18] December 22, 2023 Response to Office Action, TSDR pp. 10-89.

[19] *Id.*, TSDR p. 11. As explained above, Registrant's deletion of the "long-term care insurance" services rendered the proceeding moot as to those services. TMEP § 1716.04(d).

[20] *Id.*, TSDR p. 14.

used on Registrant's website as an advertisement and prominent tagline in association with the services that are listed in the registration.[21]

On February 2, 2024, the Examiner issued a notice of incomplete response because the webpage printout attached as Exhibit A to Registrant's response failed to include the complete URL address and date of access or printing.[22] Because Registrant made a bona fide attempt to advance the proceeding by timely filing a substantially complete response, the Examiner granted Registrant additional time to address the outstanding issue.[23]

On February 5, 2024, Registrant supplemented its response to include the URLs and access dates of the documents comprising Exhibit A to the Dvorak Declaration.[24]

On February 16, 2024, the Examiner issued a Final Office Action finding that Registrant failed to rebut the prima facie showing that Registrant was not using its EVERWISE CREDIT UNION mark in commerce, as of the SOU Deadline, in connection with its listed Class 36 services. In particular, the Examiner found that Registrant's declaration and accompanying marketing evidence failed to rebut the finding that Registrant's use of the mark on the submitted specimen did not constitute bona fide use of the mark in commerce as of the SOU Deadline.[25]

---

[21] *Id.*

[22] February 2, 2024 Non-Final Office Action, TSDR p. 2.

[23] *Id.*

[24] February 5, 2024 Supplemental Response, TSDR p. 3.

[25] February 16, 2024 Final Office Action, TSDR pp. 2-3.

Registrant then instituted this appeal.[26] The appeal is fully briefed.[27] For the reasons explained below, we affirm the Examiner's finding that Registrant failed to demonstrate bona fide use in commerce of its EVERWISE CREDIT UNION mark as of the SOU Deadline and, therefore, the subject registration will be cancelled.

## III. Evidence and Arguments[28]

### A. Registrant's Evidence and Arguments

Registrant argues that the webpage specimen submitted with its Statement of Use on April 14, 2023, and the evidence submitted with its December 22, 2023 Response to the Combined Notice of Institution and Non-Final Office Action, show use of the mark EVERWISE CREDIT UNION in connection with the listed Class 36 services as of the SOU Deadline by displaying the mark with the advertising of its services that are rendered in commerce.[29] Specifically, Registrant contends that the webpage specimen, displayed below, shows the mark EVERWISE CREDIT UNION

---

[26] 1 TTABVUE. "After issuance of a final Office action in an expungement or reexamination proceeding under § 2.93, a registrant may appeal to the Trademark Trial and Appeal Board, upon payment of the prescribed fee for each class in the registration for which the appeal is taken, within the time provided in § 2.142(a)(2)." Trademark Rule 2.141(b), 37 C.F.R. § 2.141(b).

[27] Registrant's Appeal Brief, 5 TTABVUE; Examiner's Appeal Brief, 9 TTABVUE; and Registrant's Reply Brief, 10 TTABVUE.

[28] The blue arrows in certain evidentiary images in this decision were provided by the Board to indicate relevant information.

[29] Registrant's Appeal Brief, p. 6-7, 5 TTABVUE 11-12. Registrant also argues that its "statement of use was accepted shortly after, on April 25, 2023, without any issues." *Id.* at p. 5, 5 TTABVUE 10.

at the top of the webpage above a section that describes what it means to be a credit

union and why Registrant's credit union should be the choice of customers.[30]



---

[30] *Id*. at p. 7, 5 TTABVUE 12 (citing April 14, 2023 Specimen filed with Statement of Use) (arrow emphasis supplied by the Board).

Further, Registrant maintains that the penultimate paragraph of the text of the webpage submitted states "Now, back to our name" and writes that Registrant is an "everwise credit union," as illustrated below:

**Now, back to our name.**
We are an everwise credit union, and though we often go by TCU now, we're still proud to be teachers. Everyone from our member services team and financial planners to our insurance agents and lending experts will take the time to educate you on how our products and services can help you move forward. In the bigger picture, we also offer personal financial empowerment programs in local schools and online that help students and adults develop enhanced financial literacy.

**So, why TCU?**
Because we're your neighbors. We live here, we work here, we raise families here. We care about all the things that you do. And we're committed to making a difference.

Registrant argues that it is "because of these direct associations between the EVERWISE CREDIT UNION mark and the advertisement of services that Registrant's specimen of use was accepted during examination" and, therefore, should be accepted now.[31]

Additionally, Registrant maintains that the presence of the terms "CREDIT UNION" in the mark EVERWISE CREDIT UNION "is sufficient to create in the minds of consumers an association between the mark and Registrant's financial services."[32] Registrant also contends that the inclusion of the "CONTACT US," "FIND A SERVICE CENTER," and "BECOME A MEMBER" tabs/links directly below the tagline "Why TCU? Because we are an Everwise Credit Union™," as illustrated

---

[31] *Id*. at p. 7, 5 TTABVUE 12 (citing April 14, 2023 Specimen filed with Statement of Use) (arrow emphasis supplied by the Board).

[32] *Id*., p. 9, 5 TTABVUE 14.

14

below, demonstrate that the services are being rendered as these tabs/links serve as an offer for performing the services to customers.[33]



According to Registrant, the Dvorak declaration should be given more weight because it is important evidence corroborating that the mark EVERWISE CREDIT UNION was used in the advertising and rendering of the registered financial services with links for customers to obtain the services.[34] Specifically, Registrant maintains that Ms. Dvorak attests to the fact that Registrant's webpage serves as a major source of advertising to potential consumers and to Registrant's over 300,000 current members who utilize the website to access information about Registrant's services and to obtain those services.[35]

---

[33] *Id.* at pp. 10-11, 5 TTABVUE 15-16.

[34] *Id.* at pp. 12-15, 5 TTABVUE 17-20.

[35] *Id.* at p. 13, 5 TTABVUE 18.

Registrant also contends that paragraph 12 of the Dvorak declaration[36] clarifies that the mark EVERWISE CREDIT UNION was used in the advertising and rendering of the Class 36 services by providing supporting evidence in the form of Exhibits A–O attached to the declaration and that the presence of the informational links at the bottom of these webpages demonstrates that Registrant was offering its financial services under the EVERWISE CREDIT UNION mark, as shown in the image below.[37]

Additionally, Registrant argues that while it "may have been in the early stages of rebranding at the time the Statement of Use was filed, the USPTO Attorney has failed to cite any legal support that imposes a strict requirement on Registrant to use

---

[36] Paragraph 12 of the Dvorak Declaration states as follows: "All of the services remaining in the Registration were being offered and provided since then. The bottom of the web page submitted as the specimen for the Statement of Use with the Registration using the Mark in commerce included links to the services being provided and other web pages with information about the services. Also, brochures that were actively distributed before and on the Date verify that the services were being provided and are attached to this Declaration as exhibits as follows: … ." *See* December 22, 2023 Response to Office Action, Ex. 1, TSDR p. 19.

[37] Registrant's Appeal Brief, p. 13, 5 TTABVUE 18.

the mark EVERWISE CREDIT UNION on every section of its webpage or on a certain number of materials."[38] Registrant further states that there has been no cessation of use of the mark EVERWISE CREDIT UNION with the listed Class 36 services since April 10, 2023. In view thereof, Registrant contends that although (1) the mark EVERWISE CREDIT UNION may be a part of a "rebrand" campaign, and (2) Registrant may have expanded use of such mark after the SOU Deadline, these circumstances do not negate the fact that the original specimen shows sufficient service mark use, i.e., a direct association between the mark and the advertising and rendering of the services as of the SOU Deadline.[39]

### B. Examiner's Arguments

The Examiner argues that none of the evidence submitted by Registrant demonstrates "bona fide use of the mark in the ordinary course of trade, as the evidence does not show use of the mark in relation to the services and rendering of such services in connection with the mark."[40] Rather, the Examiner maintains that the evidence demonstrates use of the marks TCU and TEACHERS CREDIT UNION in connection with the subject services.[41] The Examiner also contends that, when viewing the entire evidentiary record (including the Dvorak Declaration and accompanying marketing exhibits), the only document of record that shows

---

[38] *Id.* at p. 14, 5 TTABVUE 19.

[39] *Id.*

[40] Examiner's Appeal Brief, p. 4, 9 TTABVUE 4.

[41] *Id.*

EVERWISE CREDIT UNION on or before the SOU Deadline, is the specimen of use submitted with Registrant's Statement of Use.[42]

The Examiner states that the website specimen prominently displays "TCU Teachers Credit Union" at the top left corner of the webpage.[43] The Examiner also points out that at the top of the same page, the specimen shows "Why TCU?" in large, prominent font, and, in smaller font, below the phrase: "Because we are an Everwise Credit Union™."[44] The Examiner contends that throughout the rest of the page, the wording TCU functions as the source identifier, directly associated with the services, not EVERWISE CREDIT UNION.[45]

Furthermore, the Examiner argues, in the three instances where the wording EVERWISE CREDIT UNION appears on the specimen, the wording is not prominently shown.[46] In particular, the Examiner explains that, the first instance, discussed above, appears as part of a tagline and is not prominently displayed, especially in relation to "TCU."[47] The Examiner continues by asserting that the second and third instances of the wording are buried in text and are not prominent on the page.[48] Accordingly, the Examiner concludes that because EVERWISE CREDIT UNION is not prominently featured on the page or in association with the

---

[42] *Id.*

[43] *Id.* at p. 5, 9 TTABVUE 5.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

registered services, especially compared to the TCU or TEACHERS CREDIT UNION marks, the specimen fails to demonstrate bona fide use in commerce of the EVERWISE CREDIT UNION mark in relation to the registered services.

With regard to the exhibits submitted with the Dvorak Declaration, the Examiner notes that none of these exhibits show use of the wording EVERWISE CREDIT UNION; rather, the Examiner contends they show use of the TEACHERS CREDIT UNION and TCU marks in connection with the services promoted in those materials.[49]

Furthermore, the Examiner argues that the Dvorak Declaration likewise does not support the position that EVERWISE CREDIT UNION was used in commerce as of the SOU Deadline.[50] The Examiner explains that Paragraphs 9 through 11 of the Dvorak Declaration confirm that the only use of the wording EVERWISE CREDIT UNION by Registrant is reflected on the specimen which does not show bona fide use of the mark for the reasons already stated.[51] And although paragraph 13 of the Dvorak Declaration asserts, in a conclusory manner, that Registrant "has made bona fide use of the mark EVERWISE CREDIT UNION," the Examiner contends that it provides no explanation for why Registrant's non-prominent use of its mark on a single page of its website was consistent with ordinary business practices in the fields of the services covered by the registration.[52]

---

[49] *Id.*

[50] *Id.* at p. 6, 9 TTABVUE 6.

[51] *Id.*

[52] *Id.*

19

The Examiner also contends that Registrant has provided no evidence that its minimal or token use of EVERWISE CREDIT UNION in an inconspicuous manner on a single page of its website is consistent with the ordinary course of trade for the services identified in its registration.[53] In fact, the Examiner asserts that Registrant's many materials featuring TCU and TEACHERS CREDIT UNION suggest otherwise, where those marks appear prominently and throughout the materials.[54] The Examiner also argues that the "de minimis (at most) nature of Registrant's use of EVERWISE CREDIT UNION on the submitted specimen is corroborated by Exhibit B attached to the Final Office Action."[55] See Exhibit B below:[56]



---

[53] *Id.*

[54] *Id.*

[55] 9 TTABVUE 7.

[56] *Id.* at pp. 6-7, 9 TTABVUE 6-7 (highlighting emphasis added by Office).

The Examiner maintains that Exhibit B shows an announcement by Registrant that it would be rebranding the credit union from TEACHERS CREDIT UNION to EVERWISE CREDIT UNION as of **June 26, 2023**, the date of the blog post.[57] The Examiner further contends that, as shown in Exhibit B, the nature of the use of EVERWISE CREDIT UNION as of June 26, 2023, well after the SOU Deadline, is consistent with Registrant's earlier uses of the marks TCU and TEACHERS CREDIT UNION shown in Registrant's specimen filed with its statement of use.[58] As shown in the exhibit, the Examiner contends that on the new website (where the blog is found), the wording EVERWISE CREDIT UNION appears prominently at the top of the webpage set apart from other wording and appears very prominently in the top portion of the blog.[59] Additionally, the Examiner maintains that EVERWISE CREDIT UNION appears multiple times at the bottom of the webpage in connection with some registered services.[60]

Based on the foregoing, the Examiner concludes that Registrant has not provided the required evidence to rebut the prima facie showing of nonuse of the EVERWISE CREDIT UNION mark in commerce in connection with the registered services prior to or on the SOU Deadline and, therefore, the registration should be cancelled.[61]

---

[57] *Id.* at p. 7, 9 TTABVUE 7.

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

### C. Registrant's Reply

In reply, Registrant counters that there is no specific requirement that a mark be displayed in a particular size or font; nor has the degree of prominence ever been defined.[62] Additionally, Registrant maintains that a mark may appear sufficiently prominent because the specimen shows the mark in different font, size, stylization, or color than the surrounding text; places the mark at the beginning of a line or sentence; and positions the mark next to a picture or description of the goods or services; or uses the ™ symbol with the mark.[63]

Based on the foregoing, Registrant argues that the mark EVERWISE CREDIT UNION is sufficiently prominent as part of the tagline on the webpage specimen of record.[64] Moreover, while Registrant states that it is aware that the mere use of the ™ symbol, alone, does not transform a non-source-identifier into a source-identifier, it maintains that the use of the ™ symbol in this case, in addition to the italicization and font size variation of the mark, renders the mark sufficiently prominent.[65]

In response to the Examiner's token or minimal use argument, Registrant contends that nothing in the record suggests that Registrant's use of the mark constitutes token use or preparatory use.[66] For example, Registrant asserts that the presence of the "CONTACT US," "FIND A SERVICE CENTER," and "BECOME A

---

[62] Registrant's Reply Brief, p. 2, 10 TTABVUE 4.

[63] *Id.* at pp. 2-3, 10 TTABVVUE 4-5.

[64] *Id.* at p. 4, 10 TTABVUE 6.

[65] *Id.*

[66] *Id.* at p. 7, 10 TTABVUE 9.

MEMBER" buttons directly below the tagline "Why TCU? Because we are an Everwise Credit Union™" and the reference to specific Class 36 services in the body of the specimen and exhibits attached to the declaration all serve as an offer for performing the services to customers and demonstrate that the services are rendered.[67]

Registrant also argues that while it may have been in the early stages of rebranding at the time the Statement of Use was filed, use of the wording EVERWISE CREDIT UNION on the submitted specimen does not demonstrate token use or preparation to use, as suggested by the Examiner.[68] Rather, Registrant maintains that there was no cessation of the advertising or rendering of Registrant's Class 36 services during the rebranding.[69]

Registrant further contends that there has been no cessation of the use of the mark EVERWISE CREDIT UNION with the registered Class 36 services since April 10, 2023.[70] Registrant therefore asserts that regardless of whether (i) the mark EVERWISE CREDIT UNION may have been a part of a "rebrand" campaign, and (ii) Registrant may have expanded use of such mark after the deadline for filing the Statement of Use, the use displayed in the original specimen nevertheless demonstrates a direct association between the mark and the advertising and

---

[67] *Id.*

[68] *Id.* at p. 6, 10 TTABVUE 8.

[69] *Id.* at p. 7, 10 TTABVUE 9.

[70] *Id.*

rendering of the services as of the SOU Deadline.[71] Lastly, Registrant argues that the Examiner consistently discredits Registrant's specimen as insufficient because it shows a 'single page of its website," yet fails to cite any legal support that imposes a strict requirement on Registrant to use the mark on every or multiple sections of the website.[72]

In sum, Registrant asserts that not only does the original webpage specimen demonstrate a direct association between the use of the mark EVERWISE CREDIT UNION and the services in Class 36 in the mind of potential consumers, but the explanation in Ms. Dvorak's declaration, as well as the corresponding evidence, corroborates this in a manner that removes any doubt.[73]

## IV. Applicable Law and Analysis

Section 45 of the Trademark Act, 15 U.S.C. § 1127, defines "use in commerce" as "the bona fide use of the mark in the ordinary course of trade, and not made merely to reserve a right in a mark." The Trademark Act provides that a mark shall be deemed to be in use commerce:

> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

---

[71] *Id.*

[72] *Id.* at pp. 7-8, 10 TTABVUE 9-10.

[73] *Id.* at p. 6, 10 TTABVUE 8.

15 U.S.C. § 1127; *see also* Trademark Rule 2.56(b)(2), 37 C.F.R. § 2.56(b)(2) (Use in the "sale of the services, include[s] use in the performing or rendering of the services.").

As noted above, use made merely to reserve a right in a mark does not satisfy the use requirements for registration. *See* 15 U.S.C. §§ 1051(a), (d)(1), 1127; *see also* TMEP § 901.02 (citing legislative history for the Trademark Law Revision Act of 1988 (TLRA), Public Law 100-667, 102 Stat. 3935); *Couture*, 778 F.3d at 1381; *Lens.com, Inc.*, 686 F.3d at 1381; *Aycock* Eng'g, 560 F.3d at 1357 (explaining the requirement that a mark be used in the "ordinary course of trade"). The "bona fide use" language in Section 45 of the Trademark Act was intended to eliminate token or preparatory uses, which occurred when applicants used marks in conjunction with selling goods or offering services for the sole purpose of obtaining registration, and with no intention of legitimately using the mark in commerce until a later date or at all. *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 1374 (Fed. Cir. 2015); *see also Christian Faith Fellowship Church v. Adidas AG*, 841 F.3d 986, 989 (Fed. Cir. 2016) (providing an overview of the statutory use in commerce requirement). Token use, or "use made merely to reserve a right in a mark," was criticized as "allow[ing] companies to obtain registration based on "minimal use," in contrast to "commercial use." S. Rep. No. 535, 6, 100th Cong. 2d Sess. (1988).

Use in commerce "contemplates 'commercial use of the type common to the particular industry in question.'" *Lewis Silkin LLP v. Firebrand LLC*, No. 92067378, 2018 WL 6923002, at *3 (TTAB 2018); see also *Paramount Pictures Corp. v. White*,

No. 91090130, 1994 WL 484936, at \*7 n.8 (TTAB 1994) (quoting The United States Trademark Association Trademark Review Commission Report and Recommendations to USTA President and Board of Directors, 77 Trademark Rep. 375, 395 (1987)), *aff'd without published opinion*, 108 F.3d 1392 (Fed. Cir. 1997). However, the definition of "bona fide use" should be interpreted with flexibility to encompass various genuine, but less traditional, trademark uses, such as those made in test markets, infrequent sales of large or expensive items, or ongoing shipments of a new drug to clinical investigators by a company awaiting FDA approval, and to preserve ownership rights in a mark if, absent an intent to abandon, use of a mark is interrupted due to special circumstances. *Id.*; *see also* Senate Judiciary Committee Report on S. 1883, Senate Report No. 100-515 dated September 15, 1988; *M.Z. Berger*, 787 F.3d at 1376 ("Congress expressly rejected inclusion of a statutory definition for 'bona fide' in order to preserve 'the flexibility which is vital to the proper operation of the trademark registration system.'").

We now turn to the merits of the appeal. The issue before us is whether Registrant demonstrated "use in commerce" within the meaning of the Trademark Act of its EVERWISE CREDIT UNION in connection with its registered services as of the SOU Deadline. For the reasons explained below, we find Registrant did not.

With its Statement of Use, Registrant submitted as its only specimen of use, the following, which it states is a screenshot of its then-current website www.tcunet.com:





## We strive to be a positive force for our members and their communities.

At TCU, our Midwestern roots run deep. We live in a place where people take pride in their hometown, recognize that local businesses are the lifeblood of the economy, and go the extra mile to help their neighbors.

As an everwise credit union, we embrace every one of these beliefs and are constantly looking for ways to put them into action.

### Let's start with two simple thoughts.

Though we were founded as Teachers Credit Union, we're not just for teachers anymore. TCU has grown to 57 locations and more than 300,000 members - making us the largest credit union in Indiana - and we deliver personal attention, convenience and access to professional help to help them reach their financial goals.

Second, it's important to note that we're a credit union and not a bank. **Credit unions** are not-for-profit institutions operated to provide maximum benefits for their members. This shows up in lower loan rates, generous rewards programs and big investments in online and mobile banking technology, to name just a few areas. We can also help you get into the home of your dreams with our mortgage lending solutions.

### Now, about those core beliefs.

At the personal level, they start with our efforts to make your life more convenient. In addition to all our service centers, our members have access to more than 700 no-fee ATMs across Indiana and 30,000-plus reduced-fee ATMs nationwide. Further, we're part of the CO-OP Shared Branch Network, which allows our members to walk into 5,600 different credit union locations nationwide to do business.

We're also focused on helping you prosper. Our members can choose a checking account that pays dividends and a credit card that offers generous rewards. They receive cash back for regular debit card use. And they can build their savings balances with a special program that transfers the change from their debit card purchases into their savings account. We also offer financial and investment services to guide you in managing your wealth as well as insurance solutions for greater protection.

On the business level, we recognize that every enterprise from small businesses to corporations need timely financing and access to capital. We offer a wide array of commercial loans at affordable rates. But we do much more than lend money. We specialize in expertise. Our team of banking professionals has in-depth knowledge of all types of industries, and they work with business owners to get them the financial tools they need.

On the community level, we provide both treasure and talent. Over the years, we've donated millions of dollars to worthwhile non-profit organizations. And our team members make time to serve on countless non-profit boards and devote thousands of hours each year to being mentors, coaches and other types of grassroots volunteers.

### Now, back to our name.

We are an everwise credit union, and though we often go by TCU now, we're still proud to be teachers. Everyone from our member services team and financial planners to our insurance agents and lending experts will take the time to educate you on how our products and services can help you move forward. In the bigger picture, we also offer personal financial empowerment programs in local schools and online that help students and adults develop enhanced financial literacy.

### So, why TCU?

Because we're your neighbors. We live here, we work here, we raise families here. We care about all the things that you do. And we're committed to making a difference.

SWITCH TO TCU

Here, there is no issue as to whether Registrant was offering its Class 36 services as of the SOU Deadline. The sole issue is whether Registrant was making bona fide use in commerce of the EVERWISE CREDIT UNION mark in connection with the registered financial services as of the SOU Deadline.

As an initial matter, we are not swayed by Registrant's argument that the specimen submitted is adequate just because the Examining Attorney who examined its service mark application found the specimen acceptable.[74] "Neither the Director nor the Board are bound by prior decisions of Examining Attorneys in a subject application that matured into a registration, and the Examining Attorney's acceptance of Applicant's … specimens does not preclude evaluation of Applicant's use in this [reexamination] proceeding." *In re Locus Link USA*, No. 2022-100137E, 2024 WL 3274709, at *6 (TTAB 2024). Moreover, the acceptance of a specimen by the Examining Attorney does not control the ultimate question of use. *Id.* at *17; *Century 21 Real Estate Corp. v. Century Life of Am.*, No. 91075090, 1989 WL 281901, at *1 (TTAB 1989) ("[T]he mere acceptance of specimens by the Examining Attorney does not mandate a finding by us that service mark usage was made."); *see also* TMEP § 1716.04(c).

---

[74] As previously noted, because Registrant's registration file has already been considered in instituting the proceeding based on a prima facie case of nonuse, merely resubmitting or arguing the acceptability of the same specimen of use previously submitted in support of registration or maintenance thereof, or a verified statement alone, without additional supporting evidence, will likely be insufficient to rebut the prima facie case. *See* TMEP § 1716.04(c).

Turning to Registrant's specimen, the wording EVERWISE CREDIT UNION appears three times. The first instance occurs as part of the tagline, "Why TCU? Because we are an Everwise Credit Union™," as shown below:



The two other instances are found within the body of the text, as illustrated below:









**Now, back to our name.**

We are an everwise credit union, and though we often go by TCU now, we're still proud to be teachers. Everyone from our member services team and financial planners to our insurance agents and lending experts will take the time to educate you on how our products and services can help you move forward. In the bigger picture, we also offer personal financial empowerment programs in local schools and online that help students and adults develop enhanced financial literacy.

**So, why TCU?**

Because we're your neighbors. We live here, we work here, we raise families here. We care about all the things that you do. And we're committed to making a difference.

We find that in two of the three instances where the wording EVERWISE CREDIT UNION appears on the specimen, it is buried in the text of the webpage in the same font and size as the rest of the wording in the corresponding paragraph. Viewers of the webpage must search through the text just to find the purported mark, which is in all lower case and, as noted, in the same font and size as the bulk of the surrounding text. As such, we find that relevant consumers would not view the wording EVERWISE CREDIT UNION in the body of the text as a source indictor for the registered services. *See, e.g.*, *In re Osterberg*, No. 78331176, 2007 WL 616032, at *3 (TTAB 2007) (finding the mark not prominently displayed because it was buried in text describing the mark and, while the mark was shown in bold font, so was other matter); *see also* TMEP § 1301.04(f)(i) ("the designation must appear sufficiently prominent on the specimen (e.g., placement, size, or stylization) so that it will be perceived by consumers as a mark....[I]f shown in the same font, size, and color as the surrounding text on the specimen, the designation may not be perceived as a source indicator.").

The only other appearance of the wording EVERWISE CREDIT UNION is part of a tagline appearing at the top of the submitted specimen, as illustrated below:



Even if current or prospective consumers were likely to view the wording EVERWISE CREDIT UNION in the tagline "Why TCU? Because we are an EVERWISE CREDIT UNION™" as a source-indicator for the registered financial services, we nonetheless find that such use of the wording on the specimen does not constitute bona fide use of the mark in commerce, but is merely use made in an attempt to reserve a right in the mark until Registrant was actually using the mark in commerce in connection with its financial services.

This conclusion is supported by the evidence of record demonstrating the manner of Registrant's use of EVERWISE CREDIT UNION after the SOU Deadline. First, as previously noted, Registrant filed a change of name from Teachers Credit Union to Everwise Credit Union with the Office on July 19, 2023. The change of name was

executed on **June 26, 2023**, after the SOU Deadline (April 14, 2023). The fact that Registrant did not actually change its name to EVERWISE CREDIT UNION until two months after the SOU Deadline supports the finding that it added the tagline incorporating the mark to a single page on its website merely to preserve its right to make bona fide use of the mark in the future, i.e., to merely reserve a right in the mark.

Second, as noted above, bona fide use contemplates "commercial use of the type common to the particular industry in question." *Paramount Pictures Corp.*, 1994 WL 484936, at \*7 n.8  We find it quite remarkable that Registrant, in its attempts to rebut the prima facie showing of nonuse, could not produce a single additional document that uses the wording EVERWISE CREDIT UNION as a source indicator of its financial services as of the SOU Deadline. If Registrant was actually providing its financial services under the mark EVERWISE CREDIT UNION as of the SOU Deadline, we would expect Registrant to be able to demonstrate use of EVERWISE CREDIT UNION in ways common to the credit union industry, e.g., pictures of signage of its brick-and-mortar facilities, copies of checks that are provided to consumers via their banking services, communications with clients, business cards, brochures of their financial services, debit and credit cards,  etc. However, Registrant did not introduce any other examples, including any other specimens of use, to demonstrate use of its mark as of the SOU Deadline, instead relying solely on its submitted specimen to demonstrate bona fide use in commerce.

Third, with regard to the exhibits attached to the Dvorak Declaration,[75] we note that, while the exhibits demonstrate that Registrant was offering the listed services, none of the exhibits show use of the wording EVERWISE CREDIT UNION as a source indicator for these services. Instead, the marks TCU or TEACHERS CREDIT UNION appear throughout the exhibits as the source indicator for the listed services. In fact, the wording EVERWISE CREDIT UNION does not appear anywhere in these exhibits. Further, although Ms. Dvorak testified that Registrant made bona fide use of the mark EVERWISE CREDIT UNION, that testimony, standing alone, constitutes a legal conclusion to which we have given no consideration.[76] *See, e.g.*, *Frito-Lay N. Am., Inc. v. Princeton Vanguard, LLC*, No. 91195552, 2017 WL 3948367, at *5 (TTAB 2017) (affording no weight to declaration interpreting results of database searches for term alleged to be generic where declarant "has not been qualified or presented as an expert in the field of trademark law, and in any regard, we cannot substitute his legal conclusions for our own"), *aff'd*, 542 F. Supp. 3d 371 (W.D.N.C. 2021); *Alcatraz Media, Inc. v. Chesapeake Marine Tours Inc.*, No. 92050879, 2013 WL 5407315, at *7 (TTAB 2013) (disregarding opinion testimony regarding the ultimate disposition of the parties' claims), *aff'd mem.*, 565 F. App'x 900 (Fed. Cir. 2014); *cf. Edwards Lifesciences Corp. v. VigiLanz Corp.*, No. 91154210, 2010 WL 1514315, at *1 (TTAB 2010) (citation omitted) (holding the "opinions of witnesses, including those

---

[75] Registrant's December 22, 2023 Response to Non-Final Office Action, TDSR pp. 21-89.

[76] In any event, this testimony is contradicted by the additional evidence in the record that shows that the specimen displayed token use merely to reserve a right in the mark, not bona fide use.

qualified as expert witnesses, on the question of likelihood of confusion are entitled to little if any weight and should not be substituted for the opinion of the tribunal charged with the responsibility for the ultimate opinion on the question.").

The following documentary evidence of record further demonstrates that Registrant did not make bona fide use of its mark as of the SOU Deadline and did not provide its financial services under the EVERWISE CREDIT UNION mark until June 26, 2023: (1) the screenshot of Registrant's website that the original petitioner submitted with the petition for reexamination that appeared on Registrant's website on **June 16, 2023** (accessed via the Wayback Machine), as displayed below,[77]



(2) a screenshot of Registrant's website dated **June 6, 2023** (accessed by the Wayback Machine), advising consumers that "TCU is becoming Everwise;" that "[a]ll current branding will be updated, starting with our website, banking platforms, social channels, and advertising;" and that these changes would be

---

[77] July 20, 2023 Petition for Reexamination, Ex. C, TSDR p. 17.

introduced **starting June 26**, and throughout the summers, our signage and branches will be refreshed, as well."[78]



(3) the screenshot of Registrant's website **dated June 26, 2023** submitted by the Examiner, which informs customers that Registrant is now officially operating as EVERWISE CREDIT UNION as of June 26, 2023:

---

[78] February 16, 2024 Final Office Action, Ex. B, TSDR p. 23 (emphasis added).



(4) an undated online article, displayed below, from Inside Indiana Business, stating that Registrant has announced plans to change its name to Everwise Credit Union. The article further states that '[t]he new branding will launch June 26, [2023] and TCU said it does not reflect a change in ownership." (highlighted by the Office);[79] and



---

[79] February 16, 2024 Final Office Action, Ex. B., TSDR pp. 19-20.

The new branding will launch June 26, and TCU said it does not reflect a change in ownership; the credit union will remain 100% member-owned and headquartered in South Bend.

"Though we will always support local educators, it is simply time our name reflected all the members we serve today and the growth ahead," CEO Jason Osterhage said in a news release. "We have always championed financial confidence and well-being for all of our members and all of our communities. This is the next step in our evolution, as a simple yet meaningful way to connect with people aspiring to feel more confident and in control of their money and their future."

Speaking with Inside INdiana Business Host Gerry Dick, Osterhage said the rebranding was well-received among employees.

(5) a screenshot of Registrant's website **dated July 7, 2023** (accessed from the Wayback Machine), stating that "TCU is now *Everwise*."[80]



These screenshots, compared to the specimen submitted with Registrant's Statement of Use, clearly relay that Registrant will be providing its registered financial services under a new mark or brand, i.e., EVERWISE CREDIT UNION, or

---

[80] *Id.*, Ex. B., TSDR p. 22.

has now rebranded to the new name. Moreover, as shown in the screenshot of Registrant's website **dated June 26, 2023** (the third example above), the way the wording EVERWISE CREDIT UNION is used is consistent with Registrant's earlier uses of its marks TCU and TEACHERS CREDIT UNION in its specimen of use. As illustrated from the June 26, 2023 screenshot, EVERWISE CREDIT UNION appears prominently at the top of the webpage set apart from other wording and appears very prominently in the top portion of the blog. Additionally, EVERWISE CREDIT UNION appears multiple times at the bottom of the webpage in connection with some registered services.[81] Thus, the record shows Registrant's first use of EVERWISE CREDIT UNION in the ordinary course of business on its website after the SOU Deadline.

All of the foregoing screenshots support the finding that Registrant did not make bona fide use of its mark by the SOU Deadline. This evidence, all dated after the SOU deadline of April 14, 2023, shows Registrant informing its customer base that it either intended to provide financial services or had begun providing these services under the mark EVERWISE CREDIT UNION. Indeed, the necessity of announcing that Registrant would cease use of TCU for its services in favor of EVERWISE CREDIT UNION underscores that Registrant's use of the wording EVERWISE CREDIT UNION on the submitted specimen did not demonstrate bona fide use of the mark. In light of the overwhelming evidence showing that Registrant did not adopt

---

[81] These displays at the bottom of the webpage are consistent with the manner in which Registrant used its marks TCU and TEACHERS CREDIT UNION on the specimen of record.

EVERWISE CREDIT UNION as a mark for its financial services until after the SOU Deadline, the single use of "Everwise Credit Union™" on the specimen is insufficient to demonstrate bona fide use of the mark in commerce. Rather, in view of the record, the specimen demonstrates only Registrant's attempt to reserve rights in the mark through minimal, token use. Therefore, Registrant's contention that the specimen submitted with its Statement of Use demonstrates bona fide use of the EVERWISE CREDIT UNION mark as a source indicator is unavailing.

While Registrant argues, in its December 22, 2023 Response to the Office Action, that the specimen it submitted with its Statement of Use has nothing to do with any rebranding efforts,[82] Registrant concedes in its reply brief on appeal, that "[w]hile Registrant may have been in **the early stages of rebranding at the time the Statement of Use was filed**, it does not mean that the use Registrant has established on its specimen of use qualifies as token use or preparation to use."[83] (emphasis added). Registrant, however, did not submit any evidence demonstrating that it was in the early stages of rebranding at the time the Statement of Use was filed other than the specimen submitted with its Statement of Use. In any event, whether it was in the process of rebranding or not, we find that the submitted specimen does not show bona fide use of the wording EVERWISE CREDIT UNION as the source-indicator for the identified services for the reasons explained above.[84]

---

[82] Registrant's December 22, 2023 Response to Office Action, TSDR pp. 14-15.

[83] Registrant's Reply Brief, pp. 6-7, 10 TTABVUE 8-9.

[84] While we recognize that the definition of "bona fide use" should be interpreted with flexibility, the services provided by Registrant are not the type of goods or services that were

We acknowledge, based on the record, that Registrant's evidence does demonstrate bona fide use of its EVERWISE CREDIT UNION mark in connection with its registered financial services. But Registrant's bona fide use did not occur by the SOU Deadline. When viewing the procedural history of this case, as well as the evidence of record, it is clear that Registrant had obtained the maximum number of extensions to file its Statement of Use, and was up against a non-extendable deadline to submit its Statement of Use accompanied by a specimen demonstrating bona fide use of the mark in commerce. While Registrant did submit a single document dated on the SOU Deadline that displays the wording EVERWISE CREDIT UNION, Registrant, in its attempts to rebut the prima facie finding of nonuse, curiously did not submit any other documentary evidence displaying use of the wording EVERWISE CREDIT UNION as a source indicator of the registered services, showing use prior to the SOU Deadline. This lack of additional evidence demonstrating use as a source identifier pre-dating the SOU Deadline, viewed in conjunction with the screenshots of Registrant's website advising that Registrant would officially offer its registered financial services under the EVERWISE CREDIT UNION mark after the SOU Deadline, clearly shows that Registrant's use of the EVERWISE CREDIT UNION mark on the submitted specimen was not bona fide in nature but submitted for the purpose of reserving the mark for use at a future date. This is exactly the type of use the statute was designed to avoid.

---

contemplated to warrant a more flexible approach. For example, Registrant is not offering (1) a product that is currently involved in market testing, (2) large, expensive items, or (3) ongoing shipments of a new drug to clinical investigators awaiting FDA approval.

## V. Conclusion

In sum, Registrant's evidence fails to demonstrate bona fide use in commerce of the EVERWISE CREDIT UNION mark as a source indicator in rendering the identified services as of the SOU Deadline, i.e., April 14, 2023.[85]

**Decision:** We affirm, pursuant to the petition for reexamination, the Examiner's finding that Registrant failed to demonstrate use of the mark in commerce by the SOU Deadline. In view thereof, Registrant's Registration No. 7068783 for the mark EVERWISE CREDIT UNION will be cancelled in due course under § 16B(g) of the Trademark Act, 15 U.S.C. § 1066b(g).

---

[85] Applicants that are facing the statutory statement of use deadline and are not actually using the mark in commerce as of that deadline always have the option of filing another intent-to-use application for the identical mark and services rather than filing an invalid statement of use. Registrant appears to know of this option, as USPTO records show that it filed application Serial No. 98462736, on March 22, 2024 for the same standard character mark EVERWISE CREDIT UNION for the identical services set forth in the registration subject to this appeal, which claims dates of first use and first use in commerce as of June 26, 2023.